# Commonwealth v. Cameron, Appellant.

*Criminal law—Evidence—Compulsory self-incrimination—Constitution of Pennsylvania, art. III, sec. 32.*

1. Exemption from compulsory self-incrimination is not a natural right, nor is it a right secured by the federal constitution which a state constitution can neither take away nor abridge.

2. The words of sec. 32 of art III of the constitution: "Such testimony shall not afterwards be used against him in any judicial proceeding," do not confer on the witness an immunity from prosecution for an offense relative to which he has been compelled to testify.

*Criminal law—Bribery—Penalty—Act of May 23, 1874, sec. 9, P. L. 230.*

3. The legislature intended that the punishment to be imposed upon conviction under an indictment laid under sec. 9 of the Act of May 23, 1874, P. L. 230, is the same as that prescribed by sec. 48, of the penal code of March 31, 1860, P. L. 382, for the offense of offering, giving or promising a bribe. The punishment is not that provided by sec. 8 of the act of May 23, 1874, for the crime of accepting the bribe.

Argued Oct. 27, 1909. Appeal, No. 36, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., Dec. T., 1906, No. 585, on verdict of guilty in case of Commonwealth v. Charles S. Cameron. Before RICE, P. J., HENDERSON, MOR-

RISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Sentence reversed.

Indictment under sec. 9 of the Act of May 23, 1874, P. L. 230, for offering a bribe to a councilman.

At the trial the jury returned a verdict of guilty, upon which judgment of sentence was passed.

The court subsequently overruled a motion in arrest of judgment, VAN SWEARINGEN, J., specially presiding, filing an opinion in which he stated the facts to be as follows:

In the summer of 1906 an ordinance was introduced into the select branch of councils of the city of Pittsburg, providing for the granting of a franchise to the Pittsburg & Tube City Railroad Company to build its line of steam railroad through portions of the city of Pittsburg, beginning at Fourth avenue and Try street and extending thence eastwardly in Allegheny county to the city of McKeesport. Upon the ordinance being introduced into councils it was referred in the ordinary course of business to the joint committee of councils on corporations. This joint committee was composed of twenty-three members, including the chairman of each branch of councils. One of the members of the common branch of councils and a member of the joint committee on corporations was W. A. Martin. About the time this ordinance was introduced into councils and referred to the joint committee on corporations, a meeting was brought about between the said W. A. Martin and the president of the said railroad company, Charles S. Cameron. At that meeting Martin was asked his opinion relative to said ordinance, and as a result of the conference, Cameron suggested that he would give Martin the sum of $50,000 if Martin would use his influence in helping to get the ordinance passed through councils. Martin did not accept that proposition at that time, but asked for a week in which to consider it. Later, Martin went back to Cameron and told him he would take $60,000, and use his influence to secure the passage of the ordinance. This proposition was accepted by Cameron, who agreed to give Martin the $60,000 when the ordinance should have

passed councils and been approved by the mayor of the city. Negotiations were had from time to time, and some dissatisfaction arose relative to the matter, and in the course of these negotiations Cameron offered to give Martin $70,000 for his influence in securing the passage and approval of the ordinance, and agreed that if councils passed the ordinance and it was vetoed by the mayor and Martin then secured the passage of the ordinance over the veto of the mayor, Cameron would give him $80,000 for his efforts in that behalf. All these facts were established at the trial.

Cameron was indicted under the ninth section of the Act of May 23, 1874, P. L. 230, relative to cities in this state, which reads as follows: "Any person who shall, directly or indirectly, offer, give or promise, any money or thing of value, testimonial, privilege or personal advantage, to any member of councils to influence him in the performance of any of his public or official duties, shall be guilty of bribery and be punished in such manner as that offense is by law punishable."

When the case was called for trial the defendant entered the following plea in bar of the prosecution: "And Now, January 11, 1909, comes Charles S. Cameron, a citizen of the United States and of the Commonwealth of Pennsylvania, in his own proper person, into court here, and having heard the said indictment read, and protesting that he is not guilty, says, that the said Commonwealth ought not further to prosecute the said indictment against him, Charles S. Cameron, because he says that heretofore, to wit, on the sixteenth day of December, 1906, in a certain prosecution by the Commonwealth of Pennsylvania, against W. A. Martin, on a charge of corrupt solicitation of members of the Councils of the city of Pittsburg, which said charge was being heard by Police Magistrate Frank J. Brady, this defendant was duly sub-· poenaed by the Commonwealth, and was called as a witness to testify in the said case; that upon being sworn and interrogated, this defendant declined to answer the questions put to him, because said answers would tend to incriminate himself, and in this refusal defendant persisted; whereupon the

Commonwealth caused information to be made against this defendant for contempt and obstructing public justice, by reason of his said refusal to testify; that an indictment was found on said information at No. 49, December Sessions, 1906, of this Honorable Court; that this defendant was tried on said indictment and found guilty thereof, the trial court ruling that by reason of the character of the charge in which he was called to testify being bribery, and the constitutional provisions of this Commonwealth relating thereto, this defendant was not exempt from giving evidence tending to incriminate himself; that thereafter, and by reason of the judgment so rendered against this defendant, he was called again as a witness in the case of the Commonwealth v. Flaherty and Millholland, before said Police Magistrate Frank J. Brady, on a charge of conspiracy to bribe, and so thereupon was again asked by the Commonwealth certain questions tending to incriminate himself, and this defendant then and there asserted and claimed his privilege under the bill of rights and the Constitution of this Commonwealth, by refusing to give evidence incriminating himself, but defendant was then and there compelled to answer and did answer certain questions which incriminated himself in the criminal charges then and there being heard.    Wherefore this defendant saith, that, because of the aforesaid action of the Commonwealth in compelling him to so testify as aforesaid to matters and things incriminating himself in the present charge of which he stands indicted, he thereby, under the Constitution of this Commonwealth and the Constitution of the United States, became then and there immune and exempt from indictment and prosecution for the corrupt solicitation charged in this present indictment, which is the same charge whereof he was compelled to incriminate himself.    For a further special plea defendant saith, that section 32, article III, of the Constitution of Pennsylvania, unless it be held and construed to grant and secure to this defendant full and absolute immunity from prosecution for the matters and things whereof the defendant was compelled to incriminate himself under said constitutional provision, is in conflict with and violative

of defendant's rights as a citizen of the United States and a citizen of this Commonwealth, under the Fourteenth Amendment of the Constitution of the United States, as not being due process of law as therein secured and guaranteed. Wherefore defendant prays judgment that he may be discharged."

To this plea of the defendant the commonwealth demurred. We sustained the demurrer, and the defendant was convicted by the jury. None of the testimony given by the defendant before the police magistrate was used against him, and no reference thereto was made in any manner whatever upon the trial. The conviction of the defendant was had upon testimony wholly distinct and apart therefrom. The matter is now before us on motions for a new trial and in arrest of judgment, both motions being grounded in substance on the refusal of the court to sustain the defendant's plea in bar.

*Errors assigned* among others were in sustaining the commonwealth's demurrer to the special plea in denying motion in arrest of judgment and in imposing the sentence quoted in the opinion of the Superior Court.

*A. S. L. Shields* and *C. A. O'Brien,* of *O'Brien & Ashley,* for appellant.—The constitution of Pennsylvania, as properly understood and interpreted, protects the appellant from prosecution for any matter, thing or alleged crime disclosed by him under the compulsory requirement of art. III, sec. 32.

A constitutional provision stands on a different footing from a statute. The constitution is a sublimated kind of common law, universal in its application and to be liberally construed. A statute, according to our theory, is an intrusion upon common law; a modification of, or exception to it; and unless it clearly and unmistakably alters the common law, the broad general principle of the common law must prevail: Cooley on Const. Limitations (6th ed.), 311, 313; 2 Story on Const. (5th ed.), 623, 627; State v. Height, 117 Iowa, 650 (91 N. W. Repr. 935); Brown v. Walker, 161 U. S. 591 (16 Sup. Ct. Repr. 644).

Suppose, however, for a moment that the bill of rights and the rest of the constitution stand on an exact equality, we have here then the provision, bill of rights, sec. 9: "In all criminal prosecutions the accused hath a right to be heard by himself and counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or by the law of the land."

The meaning of this article is perfectly plain. It sets the commonwealth on one side and the accused person on the other, and it declares that the commonwealth must prove its case before the jury without assistance from the accused.

No doubt the theoretical objections to these constitutional provisions have considerable weight. The same objections also apply to the doctrine that penal and criminal statutes must be construed strictly, that in criminal cases the defendant is entitled to the benefit of the doubt, and that good character is a substantial element of defense against a specific criminal charge: Com. v. Smith, 185 Pa. 553.

Indeed, the theory that underlies all these provisions favorable to the accused is that mere conviction of an accused person, however guilty, is of less importance than the preservation of certain individual rights which make for the building up of individual character and for strengthening a nation. It is not to be supposed that the masters of the law in the past did not know as well as we that criminals ought to be convicted and punished, and yet they preserved what they considered safeguards of the constitution as being preferable to the supposed theoretical advantage of conviction.

With the principles of the bill of rights firmly fixed in our minds, let us read the thirty-second section of the third article, which modifies it by saying that in bribery cases a man

must testify, though it may criminate him, but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony.

The word "testimony" must be held to be synonymous with the word "evidence" (Com. v. Gibbons, 9 Pa. Superior Ct. 527) in the ninth section of the bill of rights, and when that is so held, the unanswerable reasoning of Counselman v. Hitchcock, 142 U. S. 547 (12 Sup. Ct. Repr. 195), disposes of the question. The thirty-second section must not be read in the narrow spirit in which a statute is read, but in the broad spirit in which the bill of rights is read, and if the interpretation is to be fairly made, in general subordination to the bill of rights. All trifling with words is prohibited in interpreting the constitution.

Upon the constitutional question involved we submit that the lower court in sustaining the demurrer to defendant's plea and in its elaborate opinion discharging the rule in arrest of judgment, etc., misapplied and reversed the proper rule of constitutional construction: Boyd v. U. S., 116 U. S. 616 (6 Sup. Ct. Repr. 524); Twining v. New Jersey, 211 U. S. 78 (29 Sup. Ct. Repr. 14); Com. v. Bell, 145 Pa. 374; Com. v. Gaige, 94 Pa. 193; Guldin v. Schuylkill County, 149 Pa. 210; Com. v. Griest, 196 Pa. 396; Sugar Notch Borough, 192 Pa. 349; Emery's Case, 107 Mass. 172; Com. v. Smith, 185 Pa. 553; Kelly's Contested Election, 200 Pa. 430; Com. v. Gibbons, 9 Pa. Superior Ct. 527; Horstman v. Kaufman, 97 Pa. 147; Krug v. Behringer, 20 Pa. C. C. Rep. 81; Boyle v. Smithman, 146 Pa. 255; Com. v. Meads, 11 Pa. Dist. Rep. 10; Hazlett's Est., 8 Pa. Dist. Rep. 201; Brannon v. Ruddy, 8 Pa. C. C. Rep. 176; McFadden v. Reynolds, 20 W. N. C. 312; Osborne v. Bank, 154 Pa. 134; People v. Forbes, 143 N. Y. 219 (38 N. E. Repr. 303); People v. O'Brien, 176 N. Y. 253 (68 N. E. Repr. 353); Ex parte Cohen, 104 Cal. 524 (38 Pac. Repr. 364).

A prosecution based upon disclosures made under the compulsory requirement of art. III, sec. 32, of the constitution is invalid, unlawful and in contravention of the act of March 31,

1860, sec. 49: Allegheny County v. Gibson, 90 Pa. 397; Lehigh Iron Co. v. Lower Macungie, 81 Pa. 482; Gas Co. v. Chester County, 97 Pa. 476; Erie County v. Erie City, 113 Pa. 360.

The sentence imposed by the lower court was excessive.

*Warren I. Seymour*, with him *William A. Blakeley*, for appellee.—The constitution of Pennsylvania authorizes the compulsion of testimony in bribery cases and permits the conviction of the witness provided such testimony be not used against him: Kelly's Contested Election Case, 200 Pa. 430; Com. v. Gibbons, 9 Pa. Superior Ct. 527; Counselman v. Hitchcock, 142 U. S. 547 (12 Sup. Ct. Repr. 195).

The sentence of the court below was proper: Com. v. Brown, 23 Pa. Superior Ct. 470; Rex v. Pitt, 3 Burr. 1335.

OPINION BY RICE, P. J., March 3, 1910:

If sec. 32, art. III, of the constitution were merely an act of the legislature, and not a constitutional provision, a question open to discussion would be, whether it supplied a complete protection from all the consequences against which the constitutional prohibition of compulsory self-incrimination was designed to guard, and, therefore, whether the appellant could have been compelled to give the incriminating testimony referred to in his special plea in bar. The question of the sufficiency of a statutory immunity to save the statute from conflict with the constitutional prohibition has been learnedly and elaborately discussed in many cases cited and reviewed in the opinion of the learned judge below and in the briefs of counsel, but it is not the precise question upon which this case turns. No one pretends that sec. 32, art. III, is not valid and enforceable, and could not do so without ignoring or denying effect to the decisions in Commonwealth v. Gibbons, 9 Pa. Superior Ct. 527, affirmed on appeal in Kelly's Contested Election, 200 Pa. 430, and without asserting also that exemption from compulsory self-incrimination is a natural right, or a right secured by the federal constitution, which a state constitution can neither take away nor abridge

—a position which is not sustained by principle or authority. In the celebrated case of Counselman v. Hitchcock, 142 U. S. 547, the distinction between a legislative and a constitutional impairment of the privilege was distinctly recognized, for the court said: "Legislation cannot detract from the privilege afforded by the constitution. It would be quite another thing if the constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminal evidence extracted from a witness against his will should not be used against him. But a mere act of congress cannot amend the constitution, even if it should engraft thereon such a proviso." Still more emphatic is the utterance of the supreme court of the United States in Twining v. New Jersey, 211 U. S. 78: "Even if the historical meaning of due process of law and the decisions of this court did not exclude the privilege from it, it would be going far to rate it as an immutable principle of justice which is the inalienable possession of every citizen of a free government. Salutary as the principle may seem to the great majority, it cannot be ranked with the right to hearing before condemnation, the immunity from abitrary power not acting by general laws, and the inviolability of private property. The wisdom of the exemption has never been universally assented to since the days of Bentham; many doubt it to-day, and it is best defended not as an unchangeable principle of universal justice, but as a law proved by experience to be expedient. It has no place in the jurisdiction of civilized and free countries outside the domain of the common law, and it is nowhere observed among our own people in the search for truth outside the administration of the law. It should, must, and will be rigidly observed where it is secured by specific constutitional safeguards, but there is nothing in it which gives it a sanctity above and before constitutions themsclvcs." As there is nothing in the right or privilege which gives it sanctity above and before constitutions themselves, the question before us must turn on the construction of the constitutional provisions contained in sec. 9, art. I, and sec. 32, art. III. We are not disposed to

accept unqualifiedly the construction of the former which would restrict the words "the accused cannot be compelled to give evidence against himself," to the accused then upon trial. See Horstman v. Kaufman, 97 Pa. 147; Counselman v. Hitchcock, 142 U. S. 547. Without entering into an elaborate discussion of the scope of that section, we assume that were it not for sec. 32, art. III, sec. 9, art. I, without the aid of sec. 10 of the Act of May 23, 1887, P. L. 158, would have protected the appellant from being compelled to give self-incriminating evidence in the prosecution against Martin and the prosecution against Flaherty and Millholland. Sec. 32, art. III, takes away the privilege in the class of cases to which those prosecutions belong, but couples with the deprivation of it a provision protecting the witness, who has been compelled to give self-incriminating testimony, against the use, afterwards, of such testimony against him in any judicial proceeding, except for perjury in giving it. This being a matter subject to constitutional regulation the provision cannot be rejected upon the ground that it is in conflict with sec. 9, art. I, as already pointed out; nor is it permissible to enlarge it by construction, so as to give immunity which was not intended. It is not to be treated as a subordinate and less important provision, to be warped this way or that in order to make the rule in bribery cases conform as nearly as possible to the rule in other cases. It is rather to be construed as an exception to the general rule against compulsory self-incrimination, and as expressing the extent to which the framers of the constitution and the people adopting it deemed it wise, in that instrument, to give the witness immunity in exchange for the privilege of which he has been deprived. Thus viewing it, it is impossible to conclude that the words, "such testimony shall not afterwards be used against him in any judicial proceeding" are the equivalent, or intended to be, of declaring "that the person so compelled to testify shall be exempt from punishment for the offense concerning which he is so required to testify, and of which he may be guilty." Certainly the clause would not be given that effect in the construction of a statute. This the learned counsel for the appellant

expressly concede when they say in their able and comprehensive brief, it cannot be doubted that if the section were a statutory instead of a constitutional provision it would be held ineffective.  This may not be conclusive of the construction that ought to be given to the section of the constitution, but it is a very pertinent consideration: for while great liberality of construction is allowed to bring constitutional provisions into harmony, so also is it permissible in order to bring a statute into harmony with the constitution.  If it were permissible to refer to the proceedings of the constitutional convention in order to arrive at the intent of the section, it could be shown beyond doubt that a provision to give the witness complete immunity from prosecution was proposed, fully debated by able lawyers of the convention and rejected as inexpedient.  In view of some of the later utterances of the Supreme Court upon the subject of referring to the proceedings and debates of the convention in construing a constitutional provision, we make no point of the extraneous fact above referred to and rest our conclusion exclusively upon principles of construction which are well settled.  Great stress is laid by appellant's counsel on these remarks of Justice DEAN in Kelly's Contested Election: "The argument that sec. 10 is fatally repugnant to sec. 9 of the bill of rights, and that the latter must prevail, is without force; assuming that the witness's answer would disclose the fact that he used money to purchase the votes of certain electors, his answer could not be used against him in any legal proceeding, therefore he would be subject to no penalty or fine involving deprivation of liberty or forfeiture of land or goods.  The most that he could suffer would be that odium which attaches to moral turpitude."  We think the learned counsel press these remarks beyond the real meaning of them when they cite them as supporting their contention that the witness could not afterwards be prosecuted.  We hesitate to believe that Justice DEAN intended that meaning to be taken from what he said.  The utmost that can be claimed is that as the answer could not be used against him in any legal proceeding, he would not be subjected thereby, that is, by his answers, to any

penalty or fine involving deprivation of liberty or forfeiture of lands and goods.

It is not necessary to define with exact precision what use of the testimony of the witness is prohibited; it is enough for present purposes to say that it is not impossible that a person who has been compelled to give evidence tending to criminate him may be convicted without any use whatever of that testimony. Nor is it to be implied from what is averred in a special plea in bar that it would be impossible to convict the defendant without the use, directly or indirectly, of the testimony he had given in the prosecutions above referred to. This, as well as the fact that the present prosecution was not under sec. 49 of the penal code, is an answer to the suggestion that that section barred the prosecution.

Upon the question of the effect of the provisions of the federal constitution it is sufficient to refer to Twining v. New Jersey.

We have prolonged the discussion of sec. 32, art. III, further than was necessary, for the question is very fully and satisfactorily considered in the able opinion of the learned judge below, and we all concur in his conclusion that that section is restrictive only of the use of the testimony actually given by the witness under compulsion and that it does not confer on the witness an immunity from prosecution for an offense relative to which he has been compelled to testify.

The remaining question relates to the punishment. The defendant was sentenced to pay a fine of $500 and to undergo an imprisonment in the Western Penitentiary for the term of two years. Section 9 of the Act of May 23, 1874, P. L. 230, for a violation of which the defendant was indicted and convicted, declares that any person who shall, directly or indirectly, offer, give or promise any money or thing of value, testimonial, privilege or personal advantage to any member of councils to influence him in the performance of any of his public or official duties, "shall be guilty of bribery and be punished in such manner as that offense is by law punishable." In common speech, in dictionaries, in statutes and in judicial decisions, bribery is the name given to the offense of the giver

of the bribe, as well as that of the receiver. It is so in the act of 1874. In sec. 8, which relates to the taking of bribes by members of city councils, the name given to the offense is bribery, and it is declared that the offender "shall upon conviction thereof be punished by fine not exceeding $10,000, and by separate and solitary confinement at labor for a period not exceeding five years, and shall be forever incapable of holding any place of profit or trust in this commonwealth." It is argued by the commonwealth's counsel that if the language of sec. 9, "punished in such manner as that offense is by law punishable," means as statutory bribery is punishable, we must look to sec. 8 to ascertain the punishment, and if the language does not mean that, then it must mean as common law bribery is punishable. On the other hand counsel for appellant contend that the language means that the offense is punishable as that kind of bribery is punishable under the penal code. No other legislation relating to the question has been called to our attention. If the legislature intended to make the punishment of a councilman accepting a bribe and of the person giving the bribe the same, it seems remarkable, at least, that it did not say so in clear and unmistakable language. Particularly is this so, when it is remembered that in enacting the penal code (Act of March 31, 1860, P. L. 382) the legislature approved the policy recommended by the commissioners of making a broad distinction, in respect of punishment, between the bribe giver and the public functionary accepting the bribe. Speaking of sec. 48 of the code, the commissioners say: "A distinction, however, has been made between the party offering or attempting to bribe any public functionary mentioned in the act, and the public functionary receiving or agreeing to receive such bribe; the breach of his oath and the betrayal of the public trust in such public functionary, rendering his crime of much deeper malignity and worthy of more marked and severe punishment:" Rep. on Penal Code, 20; 1 Stewart's Purdon, 913. Unquestionably, it was within the power of the legislature of 1874, when legislating as to bribery of and bribery by city councilmen to ignore this distinction and to make both offenses punishable in precisely the same way, while

leaving the distinction in full force as to bribery of and bribery by the other public functionaries mentioned in sec. 48 of the penal code. The result of so doing would be to make the offense of offering, giving or promising a bribe to a member of city councils punishable by fine not exceeding $10,000, and by separate or solitary confinement at labor for a period not exceeding five years—to say nothing of the provision rendering the offender incapable of holding any place of profit or trust in this commonwealth—while the offense of giving, offering or promising a bribe to a member of the general assembly, state officer, judge, juror, justice, referee or arbitrator is punishable by a maximum fine of $500 and a maximum term of imprisonment of one year. This anomaly furnishes no reason for departing from the plain meaning of the words used in the act of 1874, but it is a potent reason for not adopting the construction of them suggested in the argument of commonwealth's counsel if they are susceptible of another construction that does not involve such a gross anomaly. I think they are susceptible of such construction. If there were but one kind of bribery punishable by statute law, namely, the offense of accepting a bribe, it might be argued with much force that the legislature of 1874 intended the punishment attached to "that offense" to be attached to the offense prescribed against by sec. 9 of the act of 1874. But where there are two different kinds of statutory offenses falling under the general name bribery, one of these being the offense of giving, offering or promising a bribe, and the other being the acceptance of a bribe, it would seem clear that the legislature in the use of the words "that offense" did not mean the offense of accepting a bribe but did mean the offense of giving, offering or promising a bribe. It is true the word "bribery" is not used in sec. 48 of the penal code, but the word "bribe" is used, and, what is more to the purpose, the offenses prescribed against contain all the essential elements of bribery. The writer cannot escape the conclusion that the legislature intended that the punishment to be imposed upon conviction under an indictment laid under sec. 9 of the act of 1874 should be the same as that prescribed

by sec. 48 of the penal code for the offense of offering, giving or promising a bribe. If this be the correct conclusion, the maximum term of imprisonment to which the defendant could be sentenced was one year. The first four assignments of error are overruled, and the fifth is sustained.

The sentence is reversed and the record is remitted to the court of quarter sessions of Allegheny County with direction that the court proceed and sentence the defendant afresh in due order and according to law, and it is ordered that the defendant forthwith appear in that court for purpose of sentence as aforesaid.