## Commonwealth v. Shultz.

*Liquor law—Warrant of arrest—Search—Seizure of still and whiskey.*

1. A sheriff who enters with a warrant of arrest the residence of an alleged offender against the liquor laws may search the premises and lawfully seize a still and whiskey which he finds on the premises.

2. Upon the making of an arrest, it is the duty, as well as the right, of the arresting officer to take into custody any articles found in the possession of the prisoner which may fairly be used as evidence bearing upon the commission of the offence charged.

Rule to show cause why one still, one three-gallon jug and two quarts of whiskey should not be returned by the sheriff who took possession of the same when the defendant was arrested for violation of the liquor law. Q. S. Clearfield Co., Feb. Sess., 1922, No. 26.

*O'Laughlin, Fenerty & Kelley,* for rule.

*John C. Arnold,* District Attorney, *Smith & Smith* and *Chase & Chase,* contra.

BELL, P. J., Feb. 7, 1922.—Various matters of interest are not here in dispute. The Volstead Act provides for a search warrant upon strictly defined terms, which must be rigidly obeyed. The Federal courts hold as illegal all searches made which are not authorized, and require the return of the property seized. The provisions of the Volstead Act have no application to prosecutions brought for violation of the laws of Pennsylvania, and the search warrant so provided for cannot be employed.

1 D. & C.

## Commonwealth v. Shultz.

There is no provision in the statute law of Pennsylvania which authorizes a search warrant to seek for liquors or equipment for manufacturing whiskey supposed to be in the premises in the actual possession of some person. At common law, the right to cause a search warrant to issue applied to cases of felony or reasonable suspicion thereof, and usually arose in connection with larcenies. In Pennsylvania this power is practically wholly statutory, there being a question whether it exists independent of the statutes; but whether it does or not, such power has no application to the kind of criminal charge here asserted. The decisions of the Supreme Court are based upon the provisions of the Federal Constitution, which do not control the action of the State (Com. v. Cameron, 42 Pa. Superior Ct. 347), and the decisions of the Federal courts are only entitled to such weight as respect for the tribunals or the soundness of their reasoning justify. The decision upon which most of the recent Federal decisions rest is Weeks v. United States, 232 U. S. 383, in which the Supreme Court said: "It involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused seized in his home in his absence and without his authority by a United States marshal, holding no warrant for his arrest and none for the search of his premises." As the United States has no common law power, and as the seizure in this case was by an officer who had neither search warrant nor warrant for arrest, and the search and seizure was made in the defendant's home in his absence, we scarcely see how any judicial tribunal could have sustained it. The Supreme Court did not therein disapprove of Adams v. New York, 192 U. S. 585, saying of it: "The decision in that case rests upon incidental seizure made in the execution of a legal warrant," etc. It may be noted that this aspect of the case does not appear in the opinion of the Adams case, but is the ground on which the Supreme Court distinguished that case from that involved on the petition of Weeks.

An examination of nearly all of the cases cited by counsel for the petitioner leads to the conclusion that what is guarded against alike by the Federal and State Constitutions is the invasion of the defendant's tenement; as was said by Chatham, "the rain may enter, but the King may not." It may not be entered and searched except upon due process, and even the legislature cannot authorize searches which are unreasonable. At the argument it was stated by both sides that the question here involved was whether or not this case fell within what was termed by the Supreme Court of the United States "incidental seizure," and with this we fully concur.

In addition to the facts stated in the petition and answers, evidence was taken in open court, and the facts as we find them to be are that on Dec. 17, 1921, A. M. Gorman, Sheriff of Clearfield County, on information received by him, made a complaint before F. G. Chorpening, a justice of the peace of the County of Clearfield, charging the defendant with divers violations of the liquor laws; that a warrant for the arrest of the said defendant was issued by the said justice and delivered to the sheriff, who, with the said warrant, went to the house of the defendant between 7 and 8 o'clock P. M that evening and then and there arrested the defendant in his house, and immediately following thereto examined the premises, finding in the room where the defendant was at the time of his arrest a barrel of corn in process of fermentation, upstairs three barrels of mash and a jug containing two quarts of whiskey, and found in the barn a still used for the purpose of making whiskey, the search of the barn being made after the defendant had denied to the sheriff that he had a still. All of this property was found and the still and whiskey taken away by the sheriff with the prisoner then under arrest. The evidence

Commonwealth *v.* Shultz.

does not indicate that the defendant either consented or objected to the examination of the premises made by the sheriff. The defendant, on the stand, testifies that all of these articles were his, that they were used for the purpose of making whiskey, and that he had been so employing this still for a number of months, so that no question exists as to his guilt of the particular charge upon which he was arrested by Sheriff Gorman. The legal question now involved hinges entirely upon whether or not this was a proper search. The petitioner's counsel does not assert that there may not be some search made of a person who has been put under arrest, but avers that the search in this case went entirely outside of what is authorized.

We have not been able to find that any of the cases cited by the petitioner's counsel in the very full and careful brief sustain the averment that a search made under such circumstances is unlawful or that the officers may not lawfully take property, nor do we find any of them which undertake to state the physical limits within which such search may properly be made. "It is well settled that an officer making an arrest upon a criminal charge may also take into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial. The officer not only has the lawful power to do so, but he would be blameworthy if he failed to do so. The maintenance of public order and the protection of society by efficient prosecution of criminals require it:" Getchell *v.* Page (Me.), 18 L. R. A., N. S., 253. We understand this general doctrine to be so firmly established as to be practically universal. In the recent case of United States *v.* Murphy, 264 Fed. Repr. 842, the District Judge said: "The right of a seizing officer to search a defendant under ordinary circumsances, when the defendant is under arrest charged with a violation of law, cannot be questioned." In Smith *v.* Jerome, 93 N. Y. Supp. 202, it was said by Judge Gaynor: "The police have the power, and it is also their duty, to search the person of one lawfully arrested and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial." In Newberry *v.* Carpenter, 107 Mich. 567, the court said: "It is not only the right but the duty of an officer making an arrest to take from the prisoner not only stolen goods, but any articles which may be of use as proof in the trial of the offence with which the prisoner is charged." In Holker *v.* Hennessey, 39 L. R. A. 165: "In the absence of a statute, the officer has no right to take any property from the person of a prisoner, except such as may afford evidence of the crime charged or means of identifying the criminal or may be helpful in making an escape. The officer has the undoubted right to make the search, and, considering the nature of the accusation, he may, when acting in good faith, take into his possession any articles he may suppose will aid in securing the conviction of the prisoner, or will prevent escape. . . . We find no statute in this State giving the arresting officer authority to search a prisoner, but no statute is necessary. The power exists from the nature and objects of the public duty the officer is required to perform."

While we do not find any direct decisions in Pennsylvania in the brief space of time which we have been able to extend to the subject, and none are indicated by counsel, the practice here, as indicated in the decisions cited, which can be added to extensively, is that, upon the making of an arrest, it is the duty as well as the right of the arresting officer to take into custody any

1 D. & C.

Commonwealth v. Shultz.

articles found in the possession of the prisoner which may fairly be used as evidence bearing upon the commission of the offence charged. Unless this right is to be restricted to a search of the person of the prisoner, the sheriff in this case seems to have acted entirely in accordance with the general and long-established practice. That such was not the thought of the courts which have had this question before them is manifest from the language used in dealing with the cases, as in some of them there was used, by way of illustration, the securing of the evidence of guilt in a trunk or other receptacle locked and controlled by the defendant, and it was indicated how readily justice could be thwarted if there was no power to inquire into the contents thereof. The defendant here, though an alien, is entitled to the protection of the provisions of the Constitution of Pennsylvania, and these must receive a fair interpretation; but it must also be kept in mind that this provision does not rest upon a natural right, but is purely one of public policy, as was indicated by the Superior Court of Pennsylvania in Com. v. Cameron. And as we view this matter, the sheriff did nothing but his duty. It would certainly be a policy greatly crippling the administration of the criminal law if a sheriff or other officer, upon making an arrest, must close his eyes to all the physical evidences of guilt which are upon the premises and under the control of the defendant, and may neither take them in possession nor acquaint the Commonwealth with the facts, and, as a corollary thereto, the Commonwealth be deprived of the right to use the knowledge thus obtained. We do not conclude that such is or ought to be the law.

Now, Feb. 7, 1922, rule is discharged, petition dismissed, exception noted and bill sealed to the defendant.

From John M. Urey, Clearfield, Pa.