## Shannon's Election.

*Election law—Contest—Bill of particulars—Practice, Q. S.*

Whenever a petition for an election contest is general and does not embrace a specification of the illegal votes alleged as a foundation for the complaint, a bill of particulars will be allowed to respondent, which must set forth the names of the persons alleged to have voted illegally, and the manner in which the votes were illegally returned.

Rule for bill of particulars. Q. S. Dauphin Co., Sept. Sess., 1923, No. 524.

*John R. Geyer* and *Earl V. Compton*, for rule; *Michael E. Stroup*, contra.

Fox, J., Jan. 11, 1924.—On Dec. 5, 1923, a petition signed by forty-four citizens, representing themselves as qualified electors of the 4th Ward of the Election District in the Borough of Steelton, who voted at the municipal election held on Nov. 6, 1923, was presented, setting forth, *inter alia:* That at that municipal election, pursuant to law, the electors of said election district voted for one person for the office of councilman from said ward; that the candidates for that office were Harry Shannon, Republican; James J. Coleman, Democratic and Prohibition, and John P. Schlessman, Socialist, whose respective names appeared and were printed, together with the party appellation or designation, upon the official ballot prepared and furnished by the county commissioners in conformity to law; that the election board publicly returned and announced, *inter alia*, the number of votes cast in the said election district for the office of councilman as follows: Harry Shannon received

344 votes as the Republican candidate; James P. Coleman received 318 votes as the Democratic candidate and 17 votes as the Prohibition candidate; John P. Schlessman received 6 votes as the Socialist candidate. That the return of the election board was erroneous and incorrect, in that two or more persons voted whose names were on the registry of voters, but who had removed from the ward prior to the day of the election; that three or more persons voted whose names appeared on the registry of voters, but who had not resided in the 4th Ward long enough to become qualified electors thereof; that seven or more persons voted, when their names did not appear on the registry of voters, without making the required affidavit; that three or more persons voted after having taken the required affidavit as being entitled to vote on "age," but that said affidavits were false, in that these voters were not over twenty-one but under twenty-two years of age; that one or more persons voted without having paid a State or county tax within two years prior to said election; that two or more persons are shown by the ballot check-list as having voted, when in fact they did not vote; and that one or more persons who did vote are not shown as having done so, and that these votes were all cast for Harry Shannon, the respondent. Whereupon the court made an order adjudging, *inter alia*, that the petition was sufficient and that it be filed, and that Dec. 28, 1923, at 10 o'clock A. M., was fixed for hearing the same. A rule was granted upon Harry Shannon to answer the same on or before Dec. 28, 1923, the time fixed for hearing.

On Dec. 17, 1923, the respondent presented a petition praying for a rule upon the contestants to show cause why they should not be required to file a bill of particulars, setting forth the names of the said persons who are alleged to have voted illegally and wherein the votes were so illegally returned, which rule was granted and made returnable in five days. On Dec. 22, 1923, an answer of the contestants to the rule was filed, and on Dec. 24, 1923, upon motion by the respondent, the time for filing an answer in the above stated matter by the respondent was extended and the hearing was continuel until Jan. 25, 1924, at 10 o'clock A. M.

No objections to the original petition of the contestants have been filed, and the sole question before us is, should a bill of particulars, as requested, be furnished by the contestants?

"The proper office of a bill of particulars is to inform the opposite party and the court of the precise nature and character of the cause of action or defence for which the pleader contends in respect to any material or issuable facts in the case and which is not specifically set out in his pleadings. It is properly an amplification of the proceedings designed to make more specific general allegations appearing therein and thus avoid a surprise at the trial:" 31 Cyc., 565. In the case of Liscomb *v.* Agate, 51 Hun (N. Y.), 288, it was said: "The real purpose of ordering a bill of particulars is to make justice between the parties by evolving the truth from their discordant statements, and to give the parties every reasonable facility for coming to the trial fully prepared for all that may be produced by the other side."

In the Election Cases, 65 Pa. 36, our Supreme Court said: "The only safe course in such a case is to proceed in analogy to the practice in other cases, by a notice of particulars, ordered and governed by the discretion of the court. It would be an intolerable technicality if the petitioners were required to set forth in their complaint, within ten days after the election, every illegal vote, every illegal act of the election boards, and every instance of fraud. Such a nicety would prevent investigation and defeat the remedy itself. The general rule in all pleadings is that certainty to a common intent is all that is required:

Heard's Stephen's Pl., 380. The early decisions in this city were too stringent. A much truer exposition of the law, and one to be adhered to, is found in the opinion of the late Judge Thompson, in Mann *v.* Cassidy, 1 Brewst. 26, 27. As remarked by him: 'The rule must not be held so strictly as to afford protection to fraud, by which the will of the people is set at nought, nor so loosely as to permit the acts of sworn officers, chosen by the people, to be inquired into without adequate and well-defined cause.' "

And then, further along: "Whether a bill of particulars or specification of facts shall be required is exclusively in the discretion of the presiding judge." (Citing authorities.) In the case of Warren Borough Election, 274 Pa. 352, the Supreme Court said: "While a court should not be captious in viewing petitions of the character of the one here involved, yet a complaint of an undue election or a false return must be stated with clearness and precision, and the petitioners held to the exercise of due diligence to ascertain and specify the facts which, if sustained by proof, would require the court to set aside the result of the election. It was well said by Judge Allison, in Weaver *v.* Given, 6 Phila. 65, that 'the court will not grope in the dark, or follow a contestant on a fishing expedition, in the hope of being able to find enough to enable him by the investigation to make out his case.' "

One of the best considered cases upon this subject is the case of Northampton County Contested Elections, No. 2, 6 Dist. R. 150, decided by Judge Scott, and, because of its clearness and fairness, we shall quote it quite fully. The court, at page 151, said: "The practice of requiring bills of particulars in election contests, while formerly doubted to some extent, is now sanctioned by all later authorities. But it is not well settled when the demand may be made for them by the parties who may be called upon to answer or reply. It is sometimes said that an order will be made upon both parties, in the first instance, upon petition and answer being filed; sometimes an order has not been asked until progress has been made before an examiner, or upon proofs in court; sometimes the contestant is required to furnish them, upon demand made, before the respondent files his answer. This last seems to conform more closely to the analogies of other legal proceedings, and should be followed whenever the petition for contest is general and does not embrace a specification of the illegal votes alleged as a foundation for the complaint. If a petitioner includes full particulars of this complaint in his petition, nothing further may be demanded. The respondent, in his answer, is then expected to admit or deny each specification set forth; and if he proceeds to put into the issue, upon his part, districts other than those contained in the petition and bill of particulars to which his answer is direct, if that answer is framed in general terms, particulars may be demanded of him in the same way. Thus, the controversy is limited to investigating the qualifications of alleged illegal voters who are expressly named in the several districts. In election cases, the court or judge before whom the case is brought is invested with 'plenary power to make, issue and enforce all necessary orders, rules, process and decrees for a full and proper understanding and full determination and enforcement of the decision in every case, according to the course of practice in similar cases made under the laws of this Commonwealth:' Act of May 19, 1874, § 17, P. L. 208, 212.

"By this practice we arrive at a point where the issues are exactly defined and the matters of dispute marked with precision. Neither party may then go beyond the bill of particulars (Whitehouse *v.* Schalck, 5 W. N. C. 122; White's Contest, 4 Dist. R. 363; In re Griffiths, 1 Kulp, 157, Rice, P. J.) or such amendment of it as may be found proper and allowed, as in other cases.

### Shannon's Election.

To proceed otherwise would permit the parties to call before the examiner each one of the twenty thousand electors of this county, if all the districts be in issue, for the purpose of endeavoring to prove his vote to be illegal, and such person could not withhold his testimony: Act of May 19, 1874, § 19, P. L. 208, 213. This would be greatly vexatious and oppressive to the citizen, create enormous and intolerable expense, and would invite a contest from defeated candidates at each election, whenever majorities were small, with the hope that they might be reversed. Petitions and answers in such cases are not to operate as bills of discovery; they must be supported by specific and sufficient information, like all other litigated issues, and not sought for in the contents of ballot-boxes, which are not to be opened until it is proven that they contain illegal votes or evidences of miscounted results (Brislin's Case, 12 Pa. C. C. Reps. 480; McCarty's Election, 2 Pa. C. C. Reps. 561; Twentieth Ward Election, 13 Pa. C. C. Reps. 609), and not then unless such as may be illegal, or counted improperly, if all were upon one side, would exceed the majority returned: Courtright v. Broderick, 11 W. N. C. 393; Bertolet's Case, 3 Dist. R. 643; Daly v. Petroff, 10 Phila. 389; James v. McKibbin, 1 Legal Rec. 77; Fowler v. Felthoff, 1 Legal Rec. 105; McCullough's Case, 12 Phila. 570; Common Council Contest, 10 Lanc. Law Rev. 121. Whenever there is proof sufficient to open the ballot-box, it is the illegal vote only, ascertained by its number, which is to be examined, except a general scheme of misconduct in the board be apparent. With these principles kept in mind, the functions of a bill of particulars in election cases, and the practice herein suggested, will be clearly understood. If reference be made to an examiner, the order should specifically define his duties, and unnecessary delay will thus be prevented."

We have previously noted that in the petition the contestants allege that two or more persons voted whose names were on the registry of voters, but who had removed from the ward prior to the day of the election; that three or more persons voted whose names appeared on the registry of voters, but who had not resided in the ward long enough to become qualified electors thereof; that seven or more persons voted, when their names did not appear on the registry of voters, without making the required affidavit; that three or more persons voted after having taken the required affidavit as being entitled to vote on "age," but that said affidavits were false, in that the voters were not over twenty-one and under twenty-two years of age; that one or more persons voted without having paid a State or county tax within two years prior to said election, etc. We can see no good reason why, in the respective instances, the exact number should not be furnished to the respondent, nor why their names should not be made known. If this information is given to the respondent, he can at once check up, inquire into and learn whether or not the respective persons named had their names on the registry of voters, and whether or not they had removed from the ward prior to the day of election, or whether or not certain names of persons appeared on the registry of voters, but who had not resided in the 4th Ward long enough to become qualified electors thereof, or whether or not certain persons voted whose names did not appear on the registry of voters without making the required affidavit, etc. If respondent in his answer admits any one of the specifications to be true, we need make no further inquiry with respect to it; if he admits all of the specifications to be true, that would speedily put an end to the controversy. This would also obviate the subpœnaing of a large and perhaps unnecessary number of witnesses, and will facilitate the trial of the case without prejudice to the contestants and without injury to the rule as laid

Shannon's Election.

down in Election Cases, 65 Pa. 20. As was said by Judge Stewart in Lerch's Election, 21 Dist. R. 692, 700: "We can see no good reason why the exact number should not be furnished to the respondent, nor why their names should not be known. If the facts are true, as alleged, these names will have to be known sometime, and 'under article VIII, section 10, of the Constitution of Pennsylvania, a person cannot withhold his testimony in trials of contested elections on the ground that such testimony might criminate himself, since the Bill of Rights expressly directs that such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony:' Kelly's Contested Election, 200 Pa. 430. While this evidence which they give in the election contest cannot be used as evidence in a criminal case, yet the immunity which is afforded by the Constitution cannot be pleaded in the criminal case, and all these parties, if they are guilty, can be prosecuted and punished for their criminal acts: Com. v. Cameron, 42 Pa. Superior Ct. 347; but no criminal proceedings have been commenced, and it seems to the court that it is just as important that exact justice be done in the present contest as it would be if criminal proceedings were commenced. The two cases are entirely independent, and if this contest is not to degenerate into what Judge Scott called 'a fishing excursion,' every proper fact should be known before the case is sent to the examiner, so that it could be properly met by the respondent."

For the foregoing reasons, we are of the opinion that a bill of particulars should be filed by the contestants. By so doing, no injury or prejudice will result to either of them and this contest will be then more speedily determined, which will be for the public welfare.

And now, Jan. 11, 1924, the rule is made absolute and a bill of particulars shall be filed on or before Jan. 18, 1924.

From George R. Barnett, Harrisburg, Pa.