## EASTERN DISTRICT, PHILADELPHIA.

## Commonwealth versus Newton.

1 G    453
e 27 SC ¹638
1 G    453
31 SC ²118

1g   453
e40SC²210

1. The Supreme Court have jurisdiction to review a proceeding for contempt in the Common Pleas.

2. Every fact found by a court, in a proceeding for contempt, is to be taken as true, and every intendment is to be made in favor of its record, if it appears within the jurisdiction of the court.

3. A failure on the part of a witness to appear before an examiner, in obedience to a subpœna, is not a contempt of court, but a contempt of the process of the law, for which the examiner is entrusted by the law with the power to punish.

4. A witness, in contempt for not obeying a subpœna, can only be punished by fine.

5. A lawyer, in contempt of the process of the law, by neglecting to appear before an examiner to testify, cannot be punished by suspending him from his professional functions.

CERTIORARI to the Court of Common Pleas of *Susquehanna county*.

The facts of this case fully appear in the opinion of the court, delivered by

WOODWARD, J.—Whatever doubts were raised by *Austin's case*, 5 R. 191; and *M'Lauyhlin's case*, 5 W. & S. 272, as to the right of this court to review the action of inferior tribunals, in suspending members of the bar from practice, there is no ground to doubt our jurisdiction in this case, because this is a proceeding for contempt, which is a substantive criminal offence, and of which we take cognizance on *certiorari* or writ of error, in the same manner and to the same extent we do of any other public offence, for which the courts, subject to our appellate jurisdiction, assume to punish a citizen. Our jurisdiction results out of the constitution of this court. It is not self-assumed, but is forced upon us by the legislative imposition of powers and duties under which we sit, and is one of the securities of the liberty of the citizen. We would have no right to waive it, therefore, if we had the power. For the source, the character, and extent of our jurisdiction in contempt committed against inferior courts, I refer, with great satisfaction, to the opinion of Judge Sergeant, in *Hummell & Bishop's case*, 9 W. 430.

It was indeed said, in *Williamson's case*, 1 Casey, 18, that the authority to deal with this offence belongs exclusively to the court in which the contempt was committed, and that no other court can interfere, either by writ of error, habeas corpus, or mandamus —a remark which was predicated of a conviction for contempt in the District Court of the United States, over which we possess no jurisdiction whatever, but which does not admit of application to our State tribunals, over which our appellate jurisdiction is fixed by statute. We are to "examine and correct all, and all manner of error of the justices, magistrates, and courts of this Commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon to reverse, modify or affirm, such judgments and decrees, or proceedings, as the law doth or shall direct." (See Purdon's Digest, 771.) This charter of our powers cannot be so narrowed by construction as to exclude proceedings for contempt. We do not, indeed, revise such cases upon their merits. The courts having a limited jurisdiction in contempts, every fact found by them is to be taken as true, and every intendment is to be made in favor of their record, if it appears to us that they proceeded within and did not exceed their jurisdiction; but for the purpose of seeing that their jurisdiction has not been transcended, and that their proceedings, as they appear of record, have been according to law, we possess, and are bound to exercise, a supervisory power over the courts of the Commonwealth. Whether it is to be exercised by *certiorari* or writ of error, is not made a question here, and need not be considered. The record before us was

brought up by *certiorari*, and for all present purposes it is regularly here.

I have said this was a proceeding for contempt. It is entitled, like other criminal prosecutions, in the name of the Commonwealth, and the record sets forth that the defendant was ruled to answer for "contempt, &c." The particle "&c." is to be rejected as an insensible surplusage, which leaves it simply a record for contempt. But, though arraigned for contempt, and on the 18th April, 1856, suspended from practising as an attorney, apparently as the punishment for it, yet the record no where shows that the defendant was convicted of the offence. All we have is the arraignment and sentence, and if there was no other defect in the record it would have to be set aside for want of a conviction, for without a judgment, there cannot be execution. But this is not the only fault of the proceedings.

The defendant had been subpœnaed to appear before Judge Wilmot on the 23d January, 1856, to make his deposition in an action of ejectment, pending in the Common Pleas of Susquehanna county, the judge acting as commissioner or examiner, under a rule of court entered in that suit, for the purpose of taking depositions. Although the defendant claims to have appeared at the time and place appointed, we will assume, as the court below did, that he made default, and was apparently in contempt. The judge adjourned the taking of the deposition to the 25th January, when the witness not appearing in obedience to a subpœna served on him, the judge awarded an attachment, returnable forthwith, on which the defendant was brought before the judge on the 31st January, and his deposition duly taken and certified; and the judge, acting in his ministerial or extra-judicial capacity, under the rule of court, seems to have taken no further notice of the witness's failure to appear, either on the 23d or the 25th, but the court, on the same day, the 31st January, made the rule on the defendant to answer for contempt as before stated. The rule was returnable on the 2d February, but was adjourned to the April term of the court, and on the 18th April, 1856, after hearing, "the court order that the said Nahum Newton be suspended from practising as an attorney in this court until such time as reinstated by a revocation of this order."

The non-attendance of the witness on the 23d and the 25th of January, was, if unexplained to the satisfaction of the acting magistrate, a contempt of the process of the law, and by the 2d section of the Act of Assembly of 26th February, 1831, (Purdon, 323,) the magistrate had power to issue process of attachment, whereupon, says the act, "the same proceedings shall be had as are used and allowed in like cases in the courts of record in this Commonwealth."

[Commonwealth *v.* Newton.]

What are the proceedings of courts of record in respect to a defaulting witness when brought in on attachment?

He is called up to purge himself of the alleged contempt, which if he does to the satisfaction of the court, he is dismissed without more; but if he fail to purge himself, the court adjudges him guilty of contempt, and imposes the costs of the attachment, and such additional fine as, in their discretion, the case seems to demand; and, in default of payment, he may be committed to jail to compel execution of the sentence.

This is what Judge Wilmot, setting as examiner, might have done with the witness, and as he did not use these powers, it would not be unreasonable to infer that he was satisfied with such excuses as the witness was able to render for his non-appearance on the 23d or 25th. But whether the examiner was satisfied or not, what had the court to do with the matter? The contempt, if any, was not against the court, nor against even its chief officer, acting as examiner, but against the process of the law, and for that offence the law had entrusted the power to punish to the examiner. If any penalty was due, he was the officer to inflict it. His power is very expressly granted, and the mode of its exercise defined by the statutes, and penal statutes are to be strictly followed as well as construed.

It is apparent, then, that the court had no jurisdiction of the contempt they undertook to punish. But if it were granted that they had—that having issued the subpœna which was disobeyed, they might interfere to vindicate the majesty of the law and punish the recusant witness—they were bound to punish him *as a witness,* and the mode is pointed out by the Act of Assembly of 16th June, 1836, relating to contempts of courts. Purdon, 158. Disobedience to law process shall be punished by "*fine only,*" says the act. This is the express rule in regard to witnesses, and it is a general rule as to all legal process, but another act of assembly makes an exception of the injunction which the court is authorized to issue in execution of judgments in *quo warranto.* Obedience thereto may be compelled by attachment and sequestration, as in other cases of injunction, which is a grant, in that particular case, of the chancery power to imprison in execution of a decree. Without this power a court of chancery could not enforce performance of its decrees, and the legislature have invested our courts of law with the same power, where a judgment in *quo warranto* is to be executed. But that is a widely different jurisdiction from those "*summary punishments,*" which the Act of 16th June, 1836, was intended to regulate. The power to punish summarily for contempts, is essential to the existence and usefulness of courts of justice, but to prevent oppression, through abuse of the power, the legislature have carefully defined not only the cases in which it may be exercised, but the form and

[Jones *v*. The New York and Erie R. R. Co.]

mode of the punishment also, and have, moreover, declared that the power shall be "*restricted*" to the specified offence and penalties.

It is apparent the court did not heed this legislation. They punished a lawyer summarily in his professional character, for an offence as a witness. Without a conviction for contempt, they inflicted a penalty which is forbidden by statute.

This legislation would be a vain array of words, if a gentleman of the bar, who happened to be in technical contempt as a tardy witness, might, instead of being fined, be stripped of his profession. As well might the occupation of any other witness be taken away from him for disobedience to a subpœna, and his family beggared. Before such things can be done, the act of assembly *restricting* punishments for contempt, must be repealed and forgotten.

The record suggests no unprofessional or improper conduct on the part of the defendant as a practising attorney. His only fault was as a witness, and that was not such as to attract the censure of the proper tribunal to punish it. He had done nothing to forfeit the title to his profession, and yet he was thrust out of it for an offence of which he was not convicted—an offence which, if committed, belonged to a different tribunal to punish; an offence which no tribunal in Pennsylvania had any right or power to punish in the mode adopted.

A record so full of mistakes cannot be sustained in this court.

And now, to wit, March 16, 1857, this cause having been heard and fully considered, it is here ordered and adjudged, that the proceedings of the Court of Common Pleas of Susquehanna county, in the case of *The Commonwealth* v. *Nahum Newton*, be reversed, annulled, and wholly taken for naught.

And it is further ordered and adjudged, that the said Nahum Newton be restored to his rights and privileges as an attorney of the several courts of said county, as fully as he enjoyed the same before the order of 18th April, 1856, was made.