97     147
e 31 SC¹ 115

# Horstman *versus* Kaufman.

1. The Act of June 11th 1879, Pamph. L. 129, enabling the plaintiff in an execution, upon filing an affidavit that he believes the defendant owns property which he fraudulently conceals and refuses to apply to the payment of his debts, to examine said defendant on oath as to said property, is in conflict with Art. I., Sect. 9 of the Constitution, which provides that no one shall be obliged to give evidence which may criminate himself. It is therefore unconstitutional and void.

2. The testimony of a witness given under compulsion of the court, cannot be used against him on a criminal charge, for the reason that he should not have been subjected to such compulsion.

January 30th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Certiorari to the Court of Common Pleas, No. 3, of *Philadelphia county*, of January Term 1880, No. 162.

This was an action of assumpsit on a book-account between Charles J. Horstman, Otto Von Hein, and Gustavus Walter, trading as Horstman, Von Hein & Co., against Charles Kaufman, in which judgment for want of an affidavit of defence was obtained September 20th 1879, for $268.83. A fi. fa. issued on said judgment was returned nulla bona on the 21st of October 1879.

The plaintiff moved for the appointment of a commissioner under the act of June 11th 1879, Pamph. L. 129, to take the testimony of the defendant and other witnesses, and filed the following affidavit:

" Gustavus Walter, being duly sworn *according to law*, deposes and says that he is a judgment-creditor of Charles Kaufman, the defendant in the above cause, and that he is a member of the firm of Horstman, Von Hein & Co., the plaintiffs therein, and that he has reason to believe that the said defendant has property, rights in

[Horstman *v.* Kaufman.]

action, stocks, moneys or evidences of debt which the said defendant fraudulently conceals and refuses to apply to the payment of his debts.                                    GUSTAVUS WALTER.

Sworn to and subscribed before me this 10th day }
  of November, A. D. 1879.                         }
  A. H. NONES, Notary Public, 486 Broadway, N. Y. }

On November 13th 1879 the court granted a rule to show cause why a commissioner should not be appointed under the said act, and after argument the court discharged the rule, FINLETTER, J., delivering the following opinion :

"The very able argument of counsel for defendant has left scarcely a doubt on our minds as to the unconstitutionality of the act. We are not, however, called upon to decide this question, inasmuch as we are compelled to refuse the rule on other grounds. The act must be construed in conformity with the construction given to the act to which it is a supplement. The affidavit should therefore set out the facts which warrant the belief that the defendant has property, &c., and also the facts which warrant the averment of fraudulent concealment."

The plaintiff thereupon took this writ of certiorari, assigning for error the action of the court in discharging the said rule.

*Isaac S. Sharp* (with whom was *Alleman*), for the appellant.— The court below discharged the rule solely upon the ground of the insufficiency of the affidavit, in that it followed the words of the act, and did not set out the facts to warrant the belief of fraudulent concealment, as was required under the decisions of the lower courts under the Act of 1869, to which the Act of 1879 is a supplement. But since this case was decided in the court below, this court has decided in Sharpless *v.* Ziegler, 11 Norris 467, that an affidavit following the general terms of the Act of 1869 is sufficient, and the supplement of 1879 must be construed in conformity with the original act.

*Mayer Sulzberger*, for appellee.—The Act of June 11th 1879, is unconstitutional, because, first, it does not clearly express in its title the subject of it, as required by Art. III., Sect. 3, of the Constitution. It is entitled "a supplement" to the Act of 1869, but its provisions are not germane to the Act of 1869. The purport of that act was only to enable a suit to be commenced by attachment instead of by summons. This supplement has no bearing on that subject. As the object of the Act of 1869 was to give the plaintiff security at the time of bringing suit, a return of *nulla bona* could not happen, and hence the only cases in which the so-called supplement of 1879 could be invoked, are precisely those proceedings *not* under the Act of 1869. The Act of 1879 is in effect a sup-

[Horstman v. Kaufman.]

plement to the Act of June 16th 1836, Pamph. L. 763–4, entitled, " An Act relating to executions." Sections 9–18, of that act, bear the sub-title " Of proceedings to discover the defendant's effects," and the supplement of June 11th 1879, is a mere simplification of the process by which such discovery may be made.

Secondly. The supplement is unconstitutional, because it violates Art. I., Sect. 9, of the Constitution, which provides that " a man cannot be compelled to give evidence against himself." The very ground of this proceeding is a charge of fraudulent concealment, which is a misdemeanor under the Crimes' Act of 1860, sect. 130, 131, 132. The proceeding is not a judicial one, as under the Act of 1842, but is at the personal discretion of the judgment-creditor upon filing an affidavit that he has reason to believe that the debtor has acted fraudulently, and thereupon the latter must criminate himself under penalty of attachment. The act also provides for the production, under the said penalty, of books and papers, which process is equivalent to an unreasonable search within the meaning of the Bill of Rights. The act thus attacks the first principles of individual liberty, and introduces the greatest change in the law of evidence in Pennsylvania that has ever been made since the original Constitution.

This certiorari is in effect an application to this court to issue a mandamus to the court below commanding them to appoint a commissioner, but the act does not even contemplate the appointment of a special commissioner in each case if there is a standing commissioner. The principle that a witness must claim his privilege of exemption from answering when a particular question is asked, does not apply to this case, because every question to be put is intended to substantiate the criminal charge made by the affidavit. Under such circumstances, the defendant can refuse to be sworn: Galbreath v. Eichelberger, 3 Yeates 515; Cooley on Constitutional Limitations *314, *394; Broadbent v. State, 7 Md. 416; Regina v. Garbett, 1 Denison C. C. 236; 1 Greenleaf on Evidence, sect. 451; Wharton's Criminal Law, sect. 807, 808 (7th ed.); Emery's Case, 107 Mass. 172. The plaintiff in this case resides out of the jurisdiction, and made his affidavit in New York probably without any knowledge of the circumstances, and if he has a reason for his belief it was proper for the court below to compel him to state it.

Sharp, in reply.—We deny that the Act of 1879 is unconstitutional, either because of its title, or of its enacting clause. The Act of 1869 is entitled, " An Act relevant to fraudulent debtors." This "supplement" relates to a discovery of fraudulent debtors' property, and is therefore germane to the original act. It might well have been incorporated in the original act. It is settled that an act, entitled a supplement to a previous act, sufficiently indicates its subject to meet the requirements of Art. III.,

[Horstman *v.* Kaufman.]

Sect. 3. of the Constitution, if its subject is germane to the subject of the original act. In re First Presbyterian Church, 6 W. N. C. 421; Allegheny Co., Holmes's Case, 27 P. F. Smith 77; State Line Railroad Co.'s Appeal, Id. 429. Sect. 8 of the Bill of Rights, prohibiting unreasonable searches, was directed against the issuing of general criminal warrants, which had grown to be an abuse in England, and is inapplicable to this act, which provides for the common-law process of subpœna. Nor is the act in violation of the 9th section of the Declaration of Rights, which provides " that in criminal prosecutions * * * the accused cannot be compelled to give evidence against himself." The refusal to answer is a personal privilege, which must be claimed when the question is asked, the answer to which would criminate the witness, and it may be waived. But if answered under a compulsory order of the court, or under a compulsory statute, such disclosure could not be used against him in a criminal prosecution: 1 Greenl. on Ev., sect. 451; Regina *v.* Garbett, 1 Denison C. C. 236; s. c. 2 Car. & K. 474; United States *v.* Prescott, 2 Dillon Circ. C. 405; In re Brooks, 5 Pac. L. R. 236; Act of July 12th 1842, sect. 22; Purd. Dig. 53, Pamph. L. 345; Uhler *v.* Maulfair, 11 Harris 481. If this act is unconstitutional, so would be the Act of 27th of March 1865, which enables the party to call his opponent to testify; so also the Affidavit of Defence Law of 1835, and other acts of similar character. This act has been held in the lower courts to be constitutional; Loewi *v.* Haedrich, 8 W. N. C. 70; Cox *v.* Walton, Id. 360; Dorff *v.* Matthews, 36 Leg. Int. 382.

Mr. Justice GORDON delivered the opinion of the court February 14 1881.

In Sharpless *v.* Ziegler, 11 Norris 467, we held that under the Act of 17th of March 1869, where the affidavit followed in general terms the wording of the statute, it was a sufficient warrant to the prothonotary to issue the writ of attachment, and that the court had no power to quash such writ, though it might, on proper cause shown, dissolve such attachment so far as it affected the goods of the debtor seized under it. We also called attention to the obvious distinction in this respect, between this act and that of July 13th 1842, in that whilst the attachment directed by the latter can be issued only after judicial consideration, the writ authorized by the former issues from the prothonotary as a ministerial act.

The act under consideration, June 11th 1879, Pamph. L. 129, would seem in this respect to be of the same character as that of 1869. All that is required of the court is that upon filing the prescribed affidavit, it shall appoint a commissioner, an act purely ministerial. Indeed even this may be dispensed with, if there be a standing commissioner, for the act does not require that such officer be appointed specially for the case in hand.

[Horstman *v.* Kaufman.]

Whilst, therefore, the correctness of the decree in this case is admitted, we cannot agree with the court below that, admitting the validity of the act, the affidavit was insufficient to support the motion to appoint a commissioner.   The affidavit is in the words of the statute, which is all that seems to be required; no such thing as judicial discretion is left to the court, it is made the mere minister of the creditor.   The plaintiff in the execution is clothed with the sole, unrestrained, and unlimited power to call before himself and his commissioner the defendant with his books and papers, and then and there at his own good pleasure examine him and them without rule, restraint or supervision, and without limitation as to time or manner.   What questions shall be asked, how they shall be asked, what books and papers shall be produced, and how they shall be examined, how long the unfortunate debtor may be detained and when discharged, of all these the creditor is made the sole judge, and the Court of Common Pleas is but his minister to enforce his behests by subpœnas and attachments.

With all this power the execution-plaintiff clothes himself by the mere act of filing an affidavit " that he has reason to believe that said judgment debtor has property, rights in action, stocks, moneys or evidences of debt, which he fraudulently conceals and refuses to apply to the payment of his debts."   And when he is so clad with this power, whether he will use it discreetly and properly, or arbitrarily and improperly, rests altogether with himself.   A more ingenious inquisitorial device to squeeze the last farthing from the wretched debtor was never before devised, and for its complete perfection it needs but the boot and thumbscrew.

Dropping, however, the question whether the legislature can constitutionally invest one citizen with a power so arbitrary and so irresponsible as that found in this statute over a fellow-citizen, and whether a court may be so far disrobed of its judicial functions as to be made the mere tool of the creditor, there are, nevertheless, some rights possessed by the debtor, which even the law-making power is bound to respect.

One of these rights is that he shall not be compelled to give evidence that may be used against him in a criminal prosecution, in other words, he may not be compelled to do that which may criminate himself.   The framers of the Act of 1842 were careful to provide that no answer which the defendant was required to make as a witness should be used against him in any other suit or prosecution.   But this Act of 1879 makes no provision of that kind, and yet, as has been well shown by the learned counsel for the defendant, the initial proposition is to compel the debtor to reveal that which is made a misdemeanor by the Crimes Act of 1860.   This cannot be done: Galbreath *v.* Eichelberger, 3 Yeates 515.   And as this enactment proposes on its face to force the debtor to forego a constitutional right, with which the legislature has no

[Horstman *v.* Kaufman.]

power to interfere, it is utterly void and worthless. No such attempt has ever heretofore been made in Pennsylvania, and it is to no purpose to refer to the Act of 1842, for that act leaves the option with the defendant. He may verify his allegations by his affidavit, but if he does so he submits himself as a witness, and may be examined by the complainant. Even then, when he thus voluntarily submits himself, the act protects him in that it not only prohibits the use of the evidence so given from being used in any prosecution, but, also, in any suit against him : Uhler *v.* Maulfair, 11 Harris 481. The Act of 27th of March 1865, is still less to the point, for it certainly does not follow that because a party in a civil suit may use his adversary as a witness, he may therefore compel him to testify to that which would criminate himself. His rights as a witness remain, though the right to refuse to testify which he formerly had as a party, is taken away. The argument, therefore, based on this act is not sound; but the counsel for the plaintiff argues and cites a number of authorities to prove that where a witness answers under a compulsory order of the court, such answers cannot be used against him, and hence without a statutory provision he is sufficiently protected. This is true, and for the very reason that he answers under an arbitrary compulsion to which he ought not to have been subjected : Regina *v.* Garbett, 1 Denison's Cr. C. 236. In this case it was held that statements made by a witness after he had appealed to the court to be excused from making such statements, cannot be admitted to prove him guilty of crime; that such statements must be regarded as given under compulsion and duress, upon the same principle that confessions not free and voluntary cannot be received to affect the defendant.

It is thus manifest that arbitrary compulsion and duress by a court, stand on no higher ground than the duress and compulsion of natural persons. In either case, because of the wrong done to the witness, the evidence thus produced cannot afterwards be used against him.

As, then, the Act of 1879 contravenes an important principle of the Bill of Rights, it must be regarded as unconstitutional and void.

The order of the court below discharging the rule for a commissioner is affirmed.