# In re Adjudication of Contempt of Myers and Brei.

*Practice, C. P.—Contempt of court—Commitment—Appeal.*

A writ of habeas corpus does not lie to review a commitment for contempt of court. The proper remedy is by appeal.

An appellate court has the right to examine and review the record of the judgment of the lower court, when the alleged contempt arises from the refusal of a witness to answer a question on the ground that it would tend to incriminate him. Courts have the power to punish contempts and necessarily must have it to protect themselves from insult and enforce obedience to their process.

Where the contempt arises from some misconduct, committed in the presence of the court, or refusal to obey its lawful process, order or·decree, the appellate court will not inquire further than to ascertain whether the record shows such misconduct or disobedience of the court's order, and the judgment on the facts is generally conclusive.

One is not guilty of contempt of court in refusing to answer questions asked him as a witness in a criminal proceeding when his answer might subject him to criminal prosecution.

While the witness must judge of the effect of his answer and should not be required to explain how it would criminate him, yet the court must determine, from all the circumstances of the case, whether such will be its tendency from the question asked; and where from the nature of the investigation and the character of the testimony sought it reasonably appears that the answer may criminate, or tend to criminate, the witness has the right to claim his privilege and is not bound to answer the question.

In the trial of an indictment for manslaughter, a witness is not guilty of contempt of court in refusing to answer a question asked him, where there is a probability that the testimony will incriminate him or expose him to prosecution.

Argued April 14, 1924.　Appeals, Nos. 169 and 170, April T., 1924, by appellants, from judgment of Q. S. Erie Co., Feb. Sessions, 1924, Nos. 159 and 160, in re ad-

judication of contempt of Albert A. Brei and Vernon Myers. Before ORLADY, P. J., HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Appeal from order of the court of quarter session adjudging the defendants guilty of contempt of court. Before HIRT, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*S. Y. Rossiter,* and with him *Albert Thomas,* for appellants, cited: Commonwealth v. Bolger, 42 Pa. Superior Ct. 115; In re Zeigler Co., 189 Fed. 259; United States v. Church of Christ, 6 Utah 9, 21 Pac. 503 (524); In re Green, 126 Mo. A. 309, 103 S. W. 503; Victor Talking Machine v. Leeds, 150 Fed. 147, affirmed 213 U. S. 325, 29 Superior Ct. Rep. 503; Royal Trust Co. v. Washburn, 113 Fed. 531; Matthews v. Spangenberg, 15 Fed. 813; In re Perkins, 100 Fed. 950; Dinet v. People, 73 Ill. 183; McCullough v. State, 174 Ind. 525, 92 N. E. 543; Allen v. State, 131 Ind. 599, 30 N. E. 1093; In re Chadwick, 109 Mich. 588, 67 H. W. 1071; Public Service Corporation v. DeGrote, 70 N. J. Eq. 454, 62 A. 65; Watertown Paper Co. v. Place, 64 N. Y. S. 673; Thomas v. Cummins, 1 Yeates 1.

*M. Levant Davis,* District Attorney, for appellee, cited: Bridgewater v. Beaver Valley Traction Company, 27 Pa. Co. Ct. Rep. 328; Fitler v. Probasco, 2 Browne 137, 13 C. J. 6; In re Williamson, 26 Pa. 9; Brooker v. Com., 12 S. & R. 175; Com. v. Myers, 19 Pa. Dist. 1136, 13 C. J. 45, 7 American and English Enc. of Law, second ed., 49; 30 American and English Enc. of Law, second ed., 1163; Phelin v. Kenderdine, 20 Pa. 354; Com. v. Bell, 145 Pa. 374; 1 Wharton, Criminal Evidence, tenth

ed., sections 465 and 469; Kelly's Contested Election, 200 Pa. 430; Com. v. Higgins, 5 Kulp 269; Ex parte George Doll, 7 Phila. 595; Carondelet Co. v. Fairmount Ins. Assn., 15 Weekly Notes of Cases 125; Rauschmeyer v. Bank, 2 L. T. N. 67.

OPINION BY KELLER, J., July 2, 1924:

On October 18, 1923, a young woman, Mabel Cook, by name, was run down by an automobile on a public street in the City of Erie, under circumstances that indicated criminal recklessness on the part of those responsible for the movements of the car. The accident occurred at night, and after striking the victim and knocking or dragging her for a considerable distance, the automobile continued its reckless course and did not stop to render assistance to the injured person, (Act of June 30, 1919, P. L. 678, sec. 23). She died shortly afterwards from the injuries so received.

One Thomas Whalen was arrested as the perpetrator of the crime and charged with (1) voluntary manslaughter, and (2) involuntary manslaughter. The appellants, Myers and Brei, were detained in custody as material witnesses, on the theory that they were present in the car with Whalen when the girl was struck.

On the trial of Whalen they were called as witnesses by the Commonwealth, but refused to testify as to their whereabouts on the afternoon and evening of October 18th, on the ground that it would tend to incriminate them. The court below ordered them to answer, adjudged them guilty of contempt for refusing to do so and sentenced each of them to pay a fine of $200, and undergo imprisonment in the Erie County jail for the term of three months. These appeals were then taken.

Several preliminary questions are presented.

(1) We have no doubt that an appeal lies to this court from such an adjudication and sentence. It is true that in some jurisdictions habeas corpus has been upheld as a method for testing the legality of such a commitment,

and where one is committed for refusing to answer questions before a legislative commission (Emery's Case, 107 Mass. 172), or similar nonjudicial body, it furnishes the only mode of relief; but our Supreme Court held in Passmore Williamson's Case, 26 Pa. 9, that habeas corpus was not the appropriate method of reviewing the judgment of a subordinate court; that such a judgment, however erroneous, must be taken as legal and valid until reversed on writ of error or appeal. "A habeas corpus is not a writ of error. It cannot bring a case before us in such a manner that we can exercise any kind of appellate jurisdiction in it. On a habeas corpus, the judgment even of a subordinate state court cannot be disregarded, reversed or set aside, however clearly we may perceive it to be erroneous, and however plain it may be that we ought to reverse it if it were before us on appeal or writ of error" (p. 17). And in Craig v. Hecht, (Adv. Ops. Dec. 15, 1923, p. 124) the Supreme Court of the United States held that a writ of habeas corpus does not lie to review a commitment for contempt of court; that the remedy is by appeal. The question does not seem to have been raised or passed upon in Com. v. Bell, 145 Pa. 374; but in Com. v. Newton, 1 Grant 453, it was held that the Supreme Court had jurisdiction to review a proceeding for contempt in the common pleas, by certiorari or writ of error; which, it did not decide. Since the Act of May 9, 1889, P. L. 158, providing that all appellate proceedings shall be called appeals, and the Act of April 18, 1919, P. L. 72, providing for the filing of the testimony as part of the record, and its review by the appellate courts, on appeal from any order, sentence, decree or judgment of a court of record, (Scranton v. Peoples Coal Co., 274 Pa. 63), it makes little practical difference whether the appeal is in the nature of a certiorari or writ of error, for in the former the testimony now forms part of the record to be reviewed on appeal. It was said in Passmore Williamson's Case, supra, p. 19, that "contempt of court is a specific criminal offense. It is pun-

ished sometimes by indictment, and sometimes in a summary proceeding, as it was in this case. In either mode of trial, the adjudication against the offender is a conviction, and the commitment in consequence is execution." The proceeding was in the court of oyer and terminer and this court is given appellate jurisdiction of all proceedings of any kind in that court, except cases of felonious homicide. (Act of June 24, 1895, P. L. 212, sec. 7).

(2) Nor have we any doubt of the right of an appellate court to examine and review the record of such a judgment—(including the testimony, Act of April 18, 1919, supra)—when the alleged contempt arises from the refusal of a witness to answer a question on the ground that it would tend to incriminate him. Courts undoubtedly have the power to punish contempts and necessarily must have it to protect themselves from insult and enforce obedience to their process: Passmore Williamson's Case, supra, p. 18; and as a general rule,— as in cases where the contempt arises from some misconduct committed in the presence of the court, or refusal to obey its lawful process, order or decree—, the appellate court will not inquire further than to ascertain whether the record shows such misconduct or disobedience of the court's order, and its judgment on the facts is generally conclusive: Com. v. Newton, supra. But, as was well said in People v. Kelly, 24 N. Y. 74, "this rule is, of course, subject to the qualification that the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged will be conclusively determined by the order or judgment of the court, and so with equivocal acts, which may be culpable or innocent according to the circum-

388    In re CONTEMPT OF MYERS & BREI.

stances; but where the act is necessarily innocent or justifiable it would be preposterous to hold it a cause of imprisonment." "It certainly cannot be true that the decision of an inferior court adjudging a matter to be contempt precludes all investigation as to the legality of, or the proper authority of the court to make, such order." Ex parte Senior, 37 Fla. 1, 19 So. 652, 653. See also In re Briggs (N. C.) 47 S. E. 403, 405, 406. The appellate courts must exercise supervisory power over subordinate courts for the purpose of seeing that they have not exceeded their jurisdiction and that the proceedings, as they appear of record, have been according to law: Com. v. Newton, supra.

(3) Coming, then, to the main point in issue, the Constitution of Pennsylvania provides that one "cannot be compelled to give evidence against himself." (Art. I, sec. 9). In the strict language of the Constitution as written, this clause would seem to apply only to an accused in a criminal prosecution; but a more liberal interpretation has generally been given this section, and it has been held to apply to witnesses no less than to the accused, to civil actions as well as criminal prosecutions: Com. v. Cameron, 229 Pa. 592, 594; Horstman v. Kaufman, 97 Pa. 147, 151; Counselman v. Hitchcock, 142 U. S. 547; 4 Wigmore on Evidence (2d Ed.) sec. 2252, p. 834. It was pointed out in Counselman v. Hitchcock, supra, p. 562, that though there was a diversity of language in the Federal and various State Constitutions on this subject, the manifest purpose of all the Constitutions, was to prohibit the compelling of testimony of a self-incriminating kind from a party or a witness, and as a liberal construction must be placed upon constitutional provisions for the protection of personal rights it would seem that, though differently worded, the Constitutional guarantees should have the same interpretation (pp. 584-5). This was recognized by this court in Com. v. Bolger, 42 Pa. Superior Ct. 115, 121, when we said, "the Constitution......confers upon every citizen the

personal privilege of remaining silent whenever it reasonably appears that his testimony or declaration might result in self-incrimination." See also, McFadden v. Reynolds, 20 W. N. C. 312, 313. This privilege was recognized by the legislature in the enactment of section 10 of the Act of May 23, 1887, P. L. 158, 161, which provides that, "Except defendants actually upon trial in a criminal court, any competent witness may be compelled to testify in any proceeding, civil or criminal; but he may not be compelled to answer any question, which, in the opinion of the trial judge, would tend to criminate him." Construing this section, in the light of the Constitutional privilege before referred to, our Supreme Court held in Com. v. Bell, supra, that the witness is not the final arbiter of the question whether his answers to the interrogatories propounded would tend to criminate him; that it was the plain duty of the trial judge to decide that question. But, the decision thus to be made is not final and beyond review by an appellate court.

While the witness must judge of the effect of his answer and should not be required to explain how it will criminate him, yet the court must determine, under all the circumstances of the case, whether such will be its tendency from the question asked; and where from the nature of the investigation and the character of the testimony sought, it reasonably appears that the answer may criminate or tend to criminate, the witness has the right to claim his privilege and is not bound to answer: Ex parte Senior, supra, p. 655; Karel v. Conlan, (Wis.) 144 N. W. 266; Kirschner v. State, 9 Wis. 140; Chamberlain v. Willson, 12 Vt. 491; Ex parte Boscowitz, 84 Ala. 463, 4 So. 279; People v. Forbes, (N. Y.) 38 N. E. 303. The subject is treated exhaustively by Prof. Wigmore in his work on Evidence, Vol. 4, sec. 2271, pp. 889-893, (2d Ed.), and his conclusion accords with the views expressed by Chief Justice MARSHALL, in Burr's Trial, Robertson's Rep. I, 243: "When a question is propounded, it belongs to the court to consider and decide

whether *any* direct answer to it *can* implicate the witness; if this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be; the court cannot participate with him in this judgment, because they cannot decide on the effect of his answer, without knowing what it would be, and a disclosure of that fact to the judge would strip him of the privilege which the law allows and which he claims." See also Regina v. Boyes, 1 Best & Smith (Q. B.) 311, 321; State v. Thaden, (N. D.) 46 N. W. 447. The privilege extends to the disclosure of any fact which might constitute an essential link in a chain of evidence by which guilt might be established, although that fact alone would not indicate any crime. If the witness was obliged to show how the effect is produced, the protection would at once be annihilated: People v. Mather, 4 Wendell 229, 255. In Burr's Trial, supra, Chief Justice MARSHALL criticized as too narrow the contention of counsel for the United States that a witness can never refuse to answer any question unless that answer unconnected with other testimony, would be sufficient to convict him of crime. "This," he said, "would be rendering the rule almost worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness by disclosing a single fact may complete the testimony against himself." Thus a witness is protected from being compelled to disclose the circumstances of his offense, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained or made effectual for his conviction, without using his answers as direct admissions against him: Counselman v. Hitchcock, supra. On this

point Prof. Wigmore most pertinently says, (Vol. 4, sec. 2260, pp. 857-860, 2d Ed.), "Most criminal acts are made up of two or more subordinate facts, each an essential part of the completed crime. For example, embezzlement assumes (1) a position of trust or employment, (2) the receipt of valuables by the incumbent, (3) their improper disposal. So also arson at common law involves (1) the existence of a structure, (2) its use as a dwelling, (3) the setting fire by the accused, (4) a destruction of some part of the structure. Again forgery by utterance involves (1) possession by the accused (2) of a certain kind of document (3) false in its nature, and (4) its transfer to another person. In all these instances, no one of the component facts constitutes of itself the crime, and yet every one of them must be established in order to establish the crime. It is therefore obvious that unless the privilege is to remain an empty formula easily evaded, its protection must extend to each one of these facts taken separately, as well as to the general whole. It would be immaterial whether the evasion consisted in obtaining from the witness himself all these component facts by separate inquiries, or in obtaining one such fact by inquiry of himself and the remainder by other proof; the difference would be merely in the quantity of evasion; for it would be the witness' own disclosure which still would be essential to complete the proof, and his own disclosure would thus essentially involve a criminating fact." The text is fully sustained by the cases cited in its support.

If the witness is assured of immunity from prosecution by some Constitutional provision, he may not remain silent but must testify: Com. v. Bell, supra; Com. v. Cameron, supra; Kelly's Contested Election, 200 Pa. 430; and in some states the same rule applies where such immunity is given by statute: In re Briggs, supra; Ex parte Cohen, 104 Cal. 524, 38 Pac. 364; State v. Nowell, 58 N. H. 314; Brown v. Walker, 161 U. S. 591; but it should amount to immunity from prosecution, not

a mere withholding of the evidence given: Counselman v. Hitchcock, supra; People v. O'Brien, (N. Y.) 68 N. E. 353.

Let us then, in the light of these principles, examine from the record whether the conduct of the appellants, in the circumstances of this case, constituted a contempt of court or was rather an assertion of a constitutional right which the court was not privileged to deny them.

The purpose of the appellants' examination by the Commonwealth was to prove that they were with Whalen on the night of the crime, riding in his car; that Whalen was driving the car, a Packard, (corresponding to the car that hit the girl), and that they traveled from Northeast to Erie along the Buffalo Road, on which the girl was struck, arriving in Erie about the time of her injury. Brei had so testified, in substance, before the coroner. Myers had denied being with Whalen or riding with him and Brei in his automobile from Northeast to Erie, on that day, but early fled the jurisdiction and did not return until Whalen was indicted. Their statements conflicted and at least one of them had sworn falsely. At the preliminary hearing in this case officer McBride testified that Brei had told him the night Miss Cook was killed that he had been with Whalen earlier in the evening and that Whalen had run into a woman on the Buffalo Road; and that Brei was intoxicated when he saw him. Brei admitted before the coroner that he had seen McBride and called "hello" to him that night but denied conversing with him.

The theory of the Commonwealth on the trial of Whalen's case was that the occupants of his car were probably intoxicated and that the car was swaying from side to side and being operated in a wantonly reckless manner. It requires no stretch of the imagination to understand that if such was the case all the occupants of the car might have laid themselves open to prosecution because of that night's occurrences; and that appellants' testimony that they were occupants of the car at or about

the time and place the girl was struck might furnish a very material and important link in the chain of evidence in such prosecution. One of the appellants may actually have been driving the car; or they may have been partly responsible, by counsel or advice, for the reckless manner in which the car was operated; or they may have counseled, aided or abetted in not rendering assistance to the injured girl. The learned district attorney evidently felt that the other facts in the case warranted a prosecution against appellants growing out of the occurrences of that night for when Brei refused to testify on the ground that his testimony would tend to incriminate him, the district attorney stated in open court that he would be prosecuted if he refused to answer. The district attorney says the statement was not made in the hearing of the witness, but that is of no consequence. Its importance in the case is not due to the impression it may have made on the witness, but is because of the fact that it established that the law officer of the Commonwealth felt that the circumstances in connection with the occurrence warranted the witness' prosecution. If this was the opinion of the prosecuting officer of the Commonwealth, after full investigation of the circumstances within his knowledge, how can it be said that the appellants had not reasonable ground for apprehending a prosecution, or that the testimony sought to be elicited from them did not relate to material facts necessary to be proved on such trial? The court below was right in its first impression of the effect of that statement, when it said to the district attorney following his remark as above, "You are bound by any statement you make in open court, and you say that this witness will be prosecuted if he refuses to answer. Doesn't that end it?"

The situation was not changed by the district attorney, with leave of court, withdrawing the charge of voluntary manslaughter as against Whalen; that did not affect any misdemeanor with which these appellants

might be charged or even prevent them being charged
with felony, if it should develop that they were respon-
sible for Mabel Cook's death.   Its only effect would be to
relieve them of being charged as accessories of Whalen in
respect to the felony; if they, or either of them com-
mitted the act, or counseled, aided or abetted the com-
mission of any misdemeanor, his or their liability to
prosecution therefor was not affected by such with-
drawal: Act of March 31, 1860, P. L. 382, sec. 180.

Nor was it of any import in the case that Brei had
testified before the coroner, and all that was desired of
him was a repetition of that testimony.   Notwithstand-
ing his testimony before the coroner, he could not be com-
pelled to testify to the same matters in court if it tended
to incriminate him: Cullen v. Com., 24 Grattan (Va.)
624; Temple v. Com., 75 Va. 892.

The trial judge was correct in holding that the witness
himself must claim the privilege, but that his attorney
could suggest when occasion warranted such claim or
could ask the court to advise the witness of his consti-
tutional privilege as respects any question put to him:
State v. Pancoast, 5 N. D. 516, 67 N. W. 1052.

We realize fully that the exercise of this privilege may
sometimes make it difficult, perhaps impossible, to se-
cure a conviction of crime, and to that extent it may
hinder the course of justice; but not more so than the
well settled privilege of a defendant in a criminal pros-
ecution not to take the witness stand, or to have his fail-
ure to do so not referred to adversely on the trial: Act
of May 23, 1887, P. L. 158, sec. 10; Com. v. Foley, 24 Pa.
Superior Ct. 414; Com. v. Green, 233 Pa. 291.   Consti-
tutional rights are not to be set aside or disregarded
whatever may be the effect of such action on a particular
case.   On the same principle that it is better that ninety-
nine guilty men escape rather than that one innocent
man be convicted, so it is better that one prosecution
should come to naught than that the constitutional guar-
anties against compulsory self-incrimination should be

disregarded and become a dead letter.   No one would think of sending the accomplices of a burglar or thief to jail for contempt because they refused to testify on behalf of the Commonwealth, as to their presence with him at the scene of the crime; no more should such punishment be visited upon witnesses who are alleged to have been associated with a defendant on trial for the commission of a misdemeanor, where there is a probability that their testimony may tend to criminate them or expose them to prosecution.

After full consideration we are of opinion that such probability reasonably existed in this case and that the appellants were justified in claiming their privilege not to testify against themselves.

The assignments of error are sustained in each case. The judgments are reversed and the appellants discharged.