# In re Plotkin Contempt

*Robert M. Entwisle, Jr.*, and *Kennedy Smith*, for Commonwealth.

*William R. Kalson*, for defendant.

SOFFEL, J., September 4, 1951.—Benjamin Plotkin was subpœnaed to appear as a witness before the special grand jury convened for the purpose, inter alia, of investigating alleged acts of bribery, misfeasance, malfeasance and nonfeasance among police and public officials and others of the City of Pittsburgh and

County of Allegheny. The subpœna directed the witness to bring his income tax statements for the years 1946 to 1950 inclusive, his bank statements and canceled checks for this period and statements of assets and liabilities from December 31, 1946, to May 31, 1951.

The witness was sworn, appeared before the grand jury and testified. When asked if he had included in his income tax returns any moneys paid to policemen, police officials, city officials, or officials of Allegheny County as a deduction or business expense, the witness voluntarily, without claiming his privilege of self-incrimination, replied: "No sir." Requested to bring in the documents asked for in the subpœna, the witness refused. He was then brought before the presiding judge who directed him to produce these records. Availing himself of constitutional privilege, the witness refused.

Because the instant case is the first of many that will involve the same questions, instead of forthwith citing the witness for contempt, the court directed the attorneys to submit briefs and argue the questions involved in order that a decision might be had which, when reviewed by the appellate courts, would set the pattern for conduct of future witnesses relative to the same matters.

The arguments of counsel for the witness Plotkin and the Commonwealth may be summarized as follows:

## A. *Arguments in Behalf of Witness*

1. The witness is an accused, and as such cannot be compelled to give evidence against himself: Article I, sec. 9, Constitution of Pennsylvania; Contempt of Myers and Brei, 83 Pa. Superior Ct. 383.

In the strict language of the Constitution as written, this clause would seem to apply only to an accused in a criminal prosecution; but a more liberal interpre-

tation has generally been given this section and it has been held to apply to witnesses no less than to the accused, to civil actions as well as criminal prosecutions: Commonwealth v. Cameron, 229 Pa. 592, 594; Horstman v. Kaufman, 97 Pa. 147, 195; Counselman v. Hitchcock, 142 U. S. 547; 8 Wigmore on Evidence (3rd ed.), §2252, p. 320; Commonwealth v. Bolger, 42 Pa. Superior Ct. 115.

2. Section 10 of the Act of May 23, 1887, P. L. 158, recognizes the constitutional privileges and reënforces it.

3. Where from the nature of the investigation and the character of the testimony sought it reasonably appears that the answer may incriminate or tend to criminate, the witness has the right to claim his privilege and is not bound to answer: In re Contempt of Myers and Brei, 83 Pa. Superior Ct. 383, 389. In Burr's Trial, 1 Robertson Reporter 244, Chief Justice Marshall states the law:

"When a question is propounded, it belongs to the court to consider and to decide, whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims": People v. Mather, 4 Wendell 229, 254; 8 Wigmore on Evidence (3rd ed.), §2260, pp. 354, 356; Blau v. United States, 340 U. S. 159; Commonwealth v. Bane, 39 D. & C. 664.

Judge Carr states the law:

"This constitutional privilege and immunity protects all persons, whether parties accused in the cause

or mere witnesses, from being compelled to give self-incriminating testimony. . . . There is no more sacred duty of a Court than to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman, and no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied": 8 Wigmore on Evidence (3rd ed.), §2264.

In re Bruno, 29 D. & C. 429:

"The order of impounding includes necessarily her production of them when wanted by the Commonwealth. It comprehends, beyond a doubt, production under the compulsion of legal process, *i.e.*, a court order. By her forced delivery of them, she, a defendant, would be giving testimonial value to the identity, authenticity, and origin of these writings and documents in a criminal prosecution against her. For petitioners solemnly allege under oath their pertinency and worth in not only preparing a criminal case against her but in actually trying her. And it does not change the situation that, under the circumstances, she does not have exclusive control of the box or that in some of the cases she is jointly indicted with others. Action on her part is to be compelled by the constraint of the court's order. And we think this is testimonial compulsion. She could not be compelled to produce these documents in response to a subpœna *duces tecum:* Haywood *et al.* v. United States, 268 Fed. 795, 802; and likewise cannot be compelled to hold them available for use by the Commonwealth and produce them for the preparation and trial of the case against her, by order of this court."

Commonwealth v. Valeroso, 273 Pa. 213, 220:

" 'The practice, however, of calling upon defendants in criminal cases to produce incriminating papers alleged to be in their possession is so frequently adopted

by zealous prosecutors and is so objectionable that we take this occasion to express our disapproval thereof . . . . To allow a demand for the production of a document to be made upon an accused person in the presence of the jury is to require him to produce it or deny his possession thereof, or by reason of his silence to warrant injurious inferences against him. For this reason the practice is properly forbidden. . . . We approve the rule laid down in McKnight v. United States, because it seems to us the only effective method of preventing a practice which virtually deprives the defendant in a criminal case of a right guaranteed him by the Constitution' ": People v. Gibson, 218 N. Y. 70.

In re Appeal of Manko, 168 Pa. Superior Ct. 177.

4. The witness did not waive his privilege by testifying voluntarily as to contents of his income tax returns.

5. Article III, sec. 32 of the Constitution of Pennsylvania does not rule the instant case. The witness is not therefore required to bring in the requested documents.

6. The witness is not guilty of contempt.

### B. Arguments in Behalf of Commonwealth

1. Witness waived his privilege by voluntarily testifying to the contents of his income tax returns.

(a) It is well recognized in Pennsylvania that the privilege of the claim of self-incrimination may be waived by a witness or defendant: Commonwealth v. Frank, 159 Pa. Superior Ct. 271, 273; Commonwealth v. Tracey, 137 Pa. Superior Ct. 221, 225; Commonwealth v. House, 6 Pa. Superior Ct. 92, 107; Commonwealth v. Rohanna, 167 Pa. Superior Ct. 338, 340; Commonwealth v. Bolger, 42 Pa. Superior Ct. 115, 122; Commonwealth v. Swartz, 40 Pa. Superior Ct. 370, 377, 378; 147 A. L. R. 256 et seq.

8 Wigmore, (3rd ed.), §2276, p. 438:

To what extent does a waiver result from voluntarily taking the stand?

The case of the ordinary witness can hardly present any doubt. He may waive his privilege; this is conceded. He waives it by exercising his option of answering; this is conceded. Thus the only inquiry can be whether, by answering as to fact X, he waived it for fact Y. If the two are related facts, parts of a whole fact forming a single relevant topic, then his waiver as to a part is a waiver as to the remaining parts, because the privilege exists for the sake of the criminating fact as a whole.

Applying these principles to the instant case, the Commonwealth contends:

(1) The witness Plotkin was sworn to tell the whole truth.

(2) The witness voluntarily testified to the fact that he had not included in his income tax returns for 1946 through 1950, as a deduction or business expense, moneys paid to policemen, police officials, etc.

(3) To permit him to claim privilege against disclosure of the returns themselves would deprive the Commonwealth and the grand jury of their right to a full and complete cross-examination and their right to test his credibility.

(4) The witness having entered upon a disclosure of certain contents of his returns without asserting his privilege must be deemed to have done so with knowledge that a full disclosure of the particulars thereof would tend to incriminate him generally and hence he must be considered to have waived his privilege in respect of all of the contents of the tax returns.

(5) The fact that the tax returns may contain incriminatory evidence pertaining to matters other than bribery is immaterial. If the returns contained incriminating information of any kind he should have asserted his privilege at the outset.

2. The witness has waived his privilege to refuse to turn over his canceled checks, check stubs, and bank statements from December 31, 1946, to May 1, 1951, and has further waived his privilege to refuse to turn over his records showing his assets and liabilities as of December 31, 1946, 1947, 1948, 1949, 1950, and May 1, 1951.

· 3. In event the question of waiver is resolved against the Commonwealth, the instant case is within article III, sec. 32 of the Pennsylvania Constitution and the witness must be compelled to produce all his personal financial records, but such records cannot afterwards be used against him in any judicial proceeding except for perjury in giving such testimony.

In the instant case there is unanimity of opinion held by counsel for witness, counsel for the Commonwealth and the court that a witness cannot be compelled to give evidence against himself; that this privilege against self-incrimination includes not merely an accused, but a witness as well; that the questions asked in the instant case would tend to incriminate.

The fifth amendment of the Constitution of the United States provides that no person accused of a crime shall be compelled to give evidence against himself. It is well established that the immunity granted by the Federal Constitution does not apply in a proceeding before a State court: Twining v. State of New Jersey, 211 U. S. 78; Adamson v. California, 332 U. S. 46.

Article I, sec. 9, of the Pennsylvania Constitution provides that no person accused of a crime shall be compelled to give evidence against himself. In the case of In re Manko and Gross, 168 Pa. Superior Ct. 177, the court held that since Manko and Gross were, by name, accused of crime in the petition of the Attorney General, they were persons accused—not witnesses —and came within the protection of article I, sec. 9,

of the Constitution. The instant case is clearly distinguishable from the Manko and Gross case because the witness Plotkin has not been specifically named in the Attorney General's petition. Not being so named, he is not "a person accused of a crime" within the meaning of article I, sec. 9, of the Constitution and that section does not apply to him at all.

However, section 10 of the Act of May 23, 1887, P. L. 158, cannot be overlooked. This provides that any competent witness may be compelled to testify in any proceeding except that no witness may be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him. In view of the statute and in view of the holding of the Supreme Court in Commonwealth v. Frank, 159 Superior Ct. 271, 273, it is clear that the privilege against self-incrimination applies to witnesses as well as to the accused in a criminal proceeding.

This conclusion renders unnecessary consideration or further discussion of points 1, 2, and 3 as outlined in the argument in support of witness. This leaves then two questions for this court to decide:

1. Did the witness waive his privilege by voluntarily testifying as to the contents of his income tax returns?

2. If this question is resolved against the Commonwealth, is the instant case ruled by and within the provisions of article III, sec. 32, of the Pennsylvania Constitution?

We shall consider these questions as stated.

1. Did the witness waive his privilege by voluntarily testifying as to the contents of his income tax returns?

The witness was asked this question with respect to the records in his possession showing his assets and liabilities as of December 31, 1946, through 1950 and as of May 31, 1951:

Do you owe any police officer or official of the City of Pittsburgh or official of the County of Allegheny any

bribe money or pay-off money that is shown by any statement of your assets and liabilities as at May 1, 1951, December 31, 1950, December 31, 1949, December 31, 1948, December 31, 1947, or as at December 31, 1946?

He answered as follows: "No, sir."

By thus answering, did the witness waive the right to exercise his privilege against self-incrimination and forfeit his right to refuse to produce requested documents? This proposition is vigorously contended for by the Commonwealth and just as vehemently denied by the defense.

The argument advanced in behalf of the witness is predicated upon the fact that the witness Plotkin, together with other witnesses was, at the request of the Commonwealth, called before the court and instructed in the law prior to giving any testimony whatsoever. It is contended that the court's instructions were, in part, erroneous and misled the witness who testified not voluntarily but under compulsion; that he cannot therefore be deemed to have waived his constitutional rights under article I, sec. 9, of the Pennsylvania Constitution.

We agree with the Commonwealth that the facts of the instant case are sufficient to constitute waiver.

With respect to the canceled checks, check stubs, and bank statements, the witness was asked whether he had ever made any pay-off or bribe to any police officers, officials of the City of Pittsburgh, or officials of the County of Allegheny by way of checks. The question went directly to the contents of his checks for this period and to the payee of checks written by him during this period. If a disclosure of these matters tended to incriminate him in any way as to bribery or anything else, he should have refused to answer any question pertaining to the contents of the checks and of the payees. Instead of asserting his privilege at this point

the witness voluntarily testified to a material fact concerning the checks themselves, viz., that they had not been used to make pay-offs or bribes to public officials. He thereby waived his privilege of refusing to turn the checks over to the grand jury for cross-examination and corroboration. Having voluntarily testified as to the contents and his use of checks he cannot now deny to the grand jury its right to corroborate his testimony or its right to inquire into the details and particulars of the facts that he testified to concerning the checks.

If his record of liabilities as at those dates contained any incriminating information he should have asserted his privilege at that point and refused to answer any questions pertaining to his record of liabilities at those dates, instead of voluntarily testifying to a fact concerning the contents of the records, viz.: that they did not show any liability owing to any public official or bribe money or pay-off money. Having voluntarily answered a question pertaining to the contents of his asset and liability records, we are of the opinion that he waived his privilege of refusing to turn the records themselves over to the grand jury for cross-examination and corroboration. But because we believe that the witness Plotkin may have been misled by the court's instructions given previous to his testimony, we shall not decide this case on the narrow technical argument of waiver. We choose to decide the instant case solely upon the application of article III, sec. 32 of the Pennsylvania Constitution.

The question for determination then narrows to this:

2. Is the instant case ruled by and within the provisions of article III, sec. 32, of the Pennsylvania Constitution?

It is our considered judgment that the instant case falls squarely within these provisions. Article III, sec. 32, of the Constitution reads as follows:

"Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offenses aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth."

This section of the Constitution is a specific modification of article I, sec. 9, of the Constitution and limits the scope of the Act of 1887, which is a mere statute. It is a constitutional provision that stands paramount and supreme in the bribery situation and in that situation alone it overrides the provisions of article I, sec. 9, and the Act of 1887. That the foregoing principle is a correct statement of the law can be seen from the following in Commonwealth v. Cameron, 42 Pa. Superior Ct. 347, 356:

"It is not to be treated as a subordinate and less important provision, to be warped this way or that in order to make the rule in bribery cases conform as nearly as possible to the rule in other cases. It is rather to be construed as an exception to the general rule against compulsory self-incrimination, and as expressing the extent to which the framers of the Constitution and the people adopting it deemed it wise, in that instrument, to give the witness immunity in exchange for the privilege of which he has been deprived."

Let us examine in some detail the specific provisions of article III, sec. 32, in order to establish that the instant case falls squarely within its provisions.

1. Section 32 commences with the phrase "any person may be compelled to testify." It is self-evident that the phrase "any person" is broad enough to include the witness Plotkin who has been subpoenaed to testify before the grand jury.

2. Section 32 then uses the language "in any lawful investigation." There is no doubt that the special grand jury before which this witness testified is "a lawful investigation" within the meaning of article III, sec. 32, of the Pennsylvania Constitution. In Commonwealth v. Klein, 40 Pa. Superior Ct. 352, appellants argued article III, sec. 32, did not apply to a grand jury. The court overruled this argument, holding that the grand jury was a lawful proceeding. This case is still good law and the decision is founded on reason and logic. After all, what do the words "any lawful investigation" mean, unless they mean proceedings before a grand jury? A judge has no power or right to conduct investigations, nor has a magistrate—apart from an actual case on trial before him. The grand jury is the only place where a lawful investigation of crime may be had.

3. Section 32 uses the language "against any person who may be charged with having committed the offense of bribery or corrupt solicitation." Does this mean that the investigation must be against a specific person named in the petition or that the question to the witness must refer to a bribe made to a specific person? Clearly not. Note that the Constitution uses the words "may be charged." The Constitution does not say, "against any person who has been charged with crime," nor does it say, "against any person who is charged with crime." It says, "may be charged." To restrict and distort the constitutional language in order to make it mean a specific person or a named person would emasculate the grand jury's power of investigation and frustrate the very purposes for which

it was appointed. It would mean that before the jury could compel the testimony of a hostile witness on the subject of bribery, it would have to know the names of the parties to the bribe, and how can it ever learn these names or properly pursue its investigation unless it can compel testimony under article III, sec. 32 of the Constitution? It is interesting to note that the Pennsylvania courts have considered that article III, sec. 32, of the Constitution must be given a broad and liberal construction. In Commonwealth v. Bell, 145 Pa. 374, the court had before it the question of the definition of the word "bribery" as it appears in article III, sec. 32, of the Constitution. The court held that the words "offense of bribery" employed in section 32, mean all bribery, whether at common law, under the Constitution itself, or under any statute. The court said (p. 390) :

"In construing a constitution it must be borne in mind that its provisions are necessarily general, and couched in the language of the people by whom it was ordained. Its words should be taken in their . . . natural, and ordinary meaning, rather than in any technical or restricted sense. . . . 'To impose a limitation upon words of comprehensive import, some express declaration to that effect, or inevitable inference, would be requisite. Especially is this so in construing the organic law of the State. Such instruments deal with larger topics, and are couched in broader phrase than are legislative acts': Houseman v. Commonwealth, 100 Pa. 222."

To the same effect is Commonwealth v. Gibbons, 9 Pa. Superior Ct. 527, where the court held as follows:

" 'A Constitution is not to receive a technical construction, like a common law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them': Commonwealth v. Clark, 7 W. & S. 127."

The special grand jury is now investigating the matters contained in paragraph 5 of the Attorney General's petition asking for the convening of the special grand jury. In the opening portion of this paragraph the Attorney General alleges that police officials of the City of Pittsburgh, politicians, ward leaders, and others, in the year 1948 and at times prior and subsequent thereto entered into an unlawful conspiracy for the protection of persons engaged in the operation of rackets generally and that in so doing those persons committed, inter alia, bribery and extortion. As part of its investigation of this phase, the records of the witness Plotkin are sought in order to determine whether anything appears in them which would show a bribe or a pay-off to any city police officials, politicians, etc. Since the special grand jury is a "lawful investigation" within the meaning of article III, sec. 32, and since it is now investigating the allegations of bribery contained in paragraph 5 of the Attorney General's petition, and since the witness's personal financial records are being sought to determine whether bribery exists in the city and who the parties concerned are, it is evidently clear that the case of this witness falls squarely within the provisions of article III, sec. 32, of the Constitution. The witness must therefore be compelled to produce and turn over his financial records, with the understanding that such records cannot afterwards be used against him in any judicial proceeding except for perjury in giving such testimony.

We therefore conclude that the instant case is ruled by the provisions of article III, sec. 32, of the Constitution of the Commonwealth of Pennsylvania. The witness Plotkin was properly directed to produce the requested records. Having refused to do this, he is guilty of contempt. The witness Plotkin will be given five days to purge himself of contempt; otherwise he will be fined and sentenced.